GARRISON, Judge.
This is an appeal from a judgment of the district court dated September 8, 1983 rendered by the trial judge in a jury trial, but granting a motion for a directed verdict made by the defendant, Amilcar J.E. Cor-rea, M.D. and dismissing plaintiffs medical malpractice suit for injuries allegedly sustained by him on February 23, 1977 when he underwent an anterior cervical fusion at Chalmette General Hospital performed by the defendant. Prior to the operation, plaintiff suffered from back pain but had the full use of his right hand. As a result of the surgery, plaintiffs right hand is paralyzed. From that judgment, which we affirm, plaintiff appeals.
The trial court judge provided excellent written reasons for judgment:
“The court feels that the motion for a directed verdict should be granted in this case and the court does hereby grant the motion for a directed verdict.
In order to be successful in this malpractice suit, the plaintiff, Alfred O’Dowd must prove:
(1) The degree of knowledge or skill possessed by neurosurgeons practicing in this community, and that the defendant,
(2) Dr. Amilcar J.E. Correa lacked this degree of knowledge or skill or failed to use reasonable care and diligence along with the best judgment in the application of that skill, and
(3) That as a proximate result of this skill or knowledge or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.
We have the testimony of the medical review panel, and the court to this point *886 has either heard the doctors involved testify or read their depositions.
The court was certainly impressed with the qualifications of all the doctors selected and the court had medical testimony that has already been presented or will be presented in this trial. If you will recall, all counsel stipulated that the court was to read the depositions of those doctors who had not testified-the reason for this was so that the court would have before it all medical before making a determination on the motion for a directed verdict.
First, we have the deposition of Dr. Alonzo Correa, a neurosurgeon from New York, who was Mr. O’Dowd’s expert, and who reviewed all the medical records.
His opinion was that Dr. Amilcar J.E. Correa, the defendant, was not negligent and did not fall below the standard of care expected of a neurosurgeon in the treatment of Mr. O’Dowd.
We have the testimony of Dr. Kenneth Yogel, the head of the neurosurgery department at the L.S.U. Medical Center. It is interesting to note that he was appointed to the medical review panel by the plaintiff, Alfred O’Dowd. His testimony was that the defendant was not negligent and that he used the acceptable standard of care in treating the plaintiff.
We have the testimony of the other two men on the medical review panel, Dr. Connelly, who was appointed by the defendant, Dr. Amilcar J.E. Correa, and of Dr. Kline, who was appointed by the other two doctors on the medical review panel.
We also have the testimony of Dr. Donald Richardson who reviewed the files of the plaintiff, Mr. O’Dowd. Every doctor in this case testified in the very same manner and their testimony was overwhelming favorable to Dr. Correa. The plaintiff has not provided the court with any medical proof whatsoever that Dr. Correa was negligent or that he deviated from that standard of care that the law imposes upon all doctors in the same speciality in this particular community.
The court is well aware that the request for a directed verdict in a civil case is a fairly new device and that the standards imposed for the granting of such motion is very strict. In a motion for a directed verdict, the court considers all of the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, and the court could grant the motion for such a directed verdict only if the facts of inferences point so strongly and overwhelmingly in favor of one party, that the court believes that reasonable men could not arrive at a contrary verdict, and only in that case is granting of the motion to be considered proper. If there is substantial evidence in favor of the plaintiff, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury would continue hearing the evidence.
The court finds that from all of the evidence presented and taking into consideration L.S.A. R.S. 9:2794, the court finds that it must grant the motion for directed verdict.
Plaintiff has failed to prove in any way whatsoever that the defendant, either lacked the degree or knowledge of skill required of him, or that he failed to use reasonable care and diligence along with his best judgment, or that he was negligent in any manner whatsoever.
The court is also well aware of the fact that the plaintiff had plead the doctrine of “res ipsa loquitur”. The court read all of the medical testimony of the doctors and heard both the testimony from Mr. O’Dowd, plaintiff, and Dr. Amilcar J.E. Correa, the defendant. The court is of the opinion that the injuries sustained were not caused by the negligence of Dr. Correa and the court could not infer from the facts presented that there was inferences of negligence. Therefore, the court feels that the doctrine of “res ipsa loquitur” applies. There was no omis *887 sion whatsoever on the defendant’s duty to the plaintiff in this case.
Mr. O’Dowd was informed prior to surgery of the risk involved. The medical testimony given in this case is overwhelmingly in favor of Dr. Correa and the testimony of each doctor is strikingly similar as to what happened during surgery. For the reasons indicated herein the court finds that it must grant the motion for a directed verdict.”
All of the medical evidence presented, including that of plaintiff’s own experts, indicates that the paralysis occurred in one of two possible ways:
1. When a bone fragment lying atop a nerve root is removed, the nerve root, if compressed by the fragment, will suddenly decompress and spring up. That “springing up” action can result in permanent nerve root damage resulting in paralysis.
2. When a bone fragment is lying beneath a nerve root, it is necessary to move the nerve root in order to remove the fragment. The mere handling of a nerve root can result in permanent damage to it and result in paralysis.
Plaintiff had bone fragments both above and below nerve roots. All of the expert testimony agrees that this is an unfortunate but unavoidable situation as it is much more dangerous to allow the bone fragments to remain in the spinal canal area.
C.C.P. Art. 1810 provides for the procedural device of a directed verdict:
“A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”
Additionally the jurisprudence has evolved various standards to be applied by the trial judge in granting or denying a motion for a directed verdict. If in viewing the facts in a light most favorable to the party opposed to the motion, the trial court concludes that the evidence is such that reasonable and fairminded men cannot arrive at a verdict in favor of the party opposing the motion then the motion to dismiss is properly granted. Campbell v. Mouton, 373 So.2d 237 (App. 3rd, 1979) appeal after remand 412 So.2d 191, writ denied 415 So.2d 954. As a practical matter, this very strict standard in favor of the party opposed to the motion will be successful only when there is absolutely no evidence contained in the record which contradicts the movers evidence or which supports the opposing party’s case. Metropolitan New Orleans Chapter of La. Consumer’s League, Inc. v. Council of City of New Orleans, 423 So.2d 1213 (App. 4th, 1982), writ denied 430 So.2d 77. In the instant case, there is absolutely no expert evidence contained in the record to support plaintiff’s contention or to contradict defendants. Indeed, both plaintiff’s and defendant’s experts agree. It is apparent that fairminded and reasonable men could not have, not merely might not have, arrived at a verdict in favor of the party opposing the motion.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.