568 So.2d 592 (1990)
Edward DYCUS
v.
MARTIN MARIETTA CORPORATION, et al.
No. 89-CA-1249.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1990.
Writ Denied December 14, 1990.
Robert E. Kerrigan, Jr., David P. Gontar, Deutsch, Kerrigan & Stiles, New Orleans, for Martin Marietta Corp.
*593 Gerald Thos. Laborde, Gretna, for Edward Dycus.
Before LOBRANO, WARD and ARMSTONG, JJ.
WARD, Judge.
On April 26, 1985, Edward Dycus was injured while operating a Mag Hammer on the premises of his employer, Martin Marietta Corporation. Dycus filed suit for benefits under Louisiana Worker's Compensation Law (La.R.S. 23:1031), et seq. Dycus later amended his petition alleging Martin Marietta committed an intentional tort. The Louisiana Worker's Compensation Act provides for compensation if an employee receives personal injury arising out of and in the course of his employment. (La.R.S. 23:1031.) As a general rule, the rights and remedies granted to an employee therein are exclusive of all rights and remedies against his employer, any officer or principal of the employer, or any co-employee. La.R.S. 23:1032. However, an exception to this rule provides that nothing therein shall affect the liability of an employer, principal, officer, or co-employee resulting from an "intentional act".
Martin Marietta filed a motion for summary judgment seeking to dismiss that portion of the action relating to the alleged intentional tort. Although Martin Marietta's motion was originally denied, the Commissioner, on rehearing, concluded Dycus' sole remedy was the relief provided by worker's compensation.
After reviewing the record, the trial judge approved the Commissioners recommendation and made it the judgment of the court. In his recommendation Commissioner Rivet states:
Your Commissioner abides by his original factual determination that there was no intentional tort. Under the exception to the exclusivity of the worker's compensation law, as set forth in Bazley v. Tortorich, 397 So.2d 475 (La.1981), there must be an intentional tort in order that the employer be exposed to a tort action by the employee. Since your Commissioner finds no intentional tort, plaintiff is limited to the benefits provided by Louisiana worker's compensation.
The Mag Hammer which Dycus was operating when the accident occurred is a specialized tool used to weld uneven metal surfaces such as the panels of fuel tanks. A single surge of electricity, between 6,000-8,000 volts, is released from the coil in the hammer head to fuse the metal surfaces together. The Mag Hammer consists of three major components (1) the capacitor, (2) the cable, and (3), the hammer head which resembles a shovel handle and contains the coil. The Mag Hammer is operated by pressing the hammer head against the surface to be welded. The capacitor is switched on and an electrical current surges through the connecting cable to the hammer head.
On the evening of the accident the Mag Hammer was shut down for several hours. Dycus' supervisor called Martin Marietta's facility crew who made the necessary repairs, and afterward they informed the supervisor that the Mag Hammer was in operating condition. The following is an excerpt of Dycus' deposition.
Q. What happened then?
A. Well, we set it up and I picked the hammer up and placed it on the plate on the floor because any time they did any work on it they would always try the machine out before then put it on the tank so they won't have any damage on the tank if something was to happen. So we took a test plate, which was supposedly the closest to the thickness of the material we were using on the tank. We put the plate on the floor and put a piece of nylon between the plate and the head and positioned the head on the plate ... They (the quality people) would set it, we didn't set the dial on the machine.
* * * * * *
The way I am standing, the Maxwell machine was close to me, the cable is very long so we had the cable piled up. And it was just the way I was standing. The cable came out of the top of the head toward me and I pushed it with my knee to keep it out of my way and when he fired the head, sparks went everywhere *594 and it felt like somebody had grabbed me in my leg or something sharp. It was just a real, a very sharp type pain in my leg. It didn't knock me down but when it did flash, of course, I threw the hammer down.
In pursuing his claim, Dycus relies on the Bazley v. Tortorich, 397 So.2d 475 (La. 1981). Dycus argues that there remains an issue of material fact concerning Martin Mariettas knowledge that there was "substantial certainty" that he would suffer harm under the circumstances presented at his job. In Babin v. Edwards, 456 So.2d 659 (La.App. 1st Cir.1984), writ denied 460 So.2d 604 (La.1984), the First Circuit noted that substantial certainty is not an alternative to intentional act but a method of proving that the act was intentional.
In Gallant v. Transcontinental Drilling Company, 471 So.2d 858 (La.App. 2d Cir. 1985), Edgar Gallant brought suit against his employer, Transcontinental, for injuries sustained in a drilling rig accident. Gallant alleged that the drilling rig derrick on which he was working was leaning dangerously at the time of the accident and that Transcontinental was aware of the dangerous condition. Because the dangerous condition existed, injury was substantially certain to follow, and Transcontinental thus was guilty of an intentional tort. Transcontinental's motion for summary judgment was initially overruled, but later was granted on rehearing.
In Caudle v. Betts, 512 So.2d 389 (La. 1987) our Supreme Court instructed the lower courts to rely on the general concept of tort law:
... when an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to a particular intentional tort alleged, in order to determine whether he has proven his cause of action and damages recoverable thereunder. At p. 389.
The preceeding examples and explanations illustrate how strong the link between defendant's conduct and plaintiff's injury must be before the defendant can be found to have committed an intentional tort under the second prong of the Bazley test.
In Caudle, a co-employee knowingly shocked a worker as a practical joke. Because the deliberate act of shocking a claimant constituted a battery under Louisiana intentional tort law, the Court was willing to find that an intentional act had been committed, allowing the claimant to utilize the intentional acts exception to the exclusivity principle. In so holding, the Court made clear that in order to escape the ambit of the worker's compensation statute, the plaintiff must plead a particular intentional tort that can be classified within the scheme of well-known intentional torts. Although the Court has not abandoned the Bazley "substantially certain" test, Caudle indicates that the test will be applied only to acts which can be classified as traditional intentional tortssuch as battery, assault, false imprisonment, etc.
Dycus fails to specify which intentional tort Martin Marietta is guilty of committing. Martin Marietta may have failed to provide Dycus with a safe place to work and therefore may be negligent; but as illustrated in Hood v. South Louis Medical Center, 517 So.2d 469 (La.App. 1st Cir. 1987), failure to maintain safe conditions at work may give rise to conditions "which, at most, could be said to have made the occurrence of an accident likely, but the circumstances fall short of indicating that injury to plaintiff was inevitable or substantially certain to occur." At p. 471.
Louisiana Courts have held that an employer's failure to provide even specifically requested safety equipment is not an intentional tort for purposes of the exception to the worker's compensation exclusivity rule. Even proof that a worker was told by his employer to work in an unsafe place was considered insufficient to prove an intentional tort. Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4th Cir.1982), writ denied, 415 So.2d 953 (La. 1982).
In Davis v. Southern Louisiana Insulations, 539 So.2d 922, 924 (La.App. 4th Cir. 1989), where Davis was injured when he fell from a fourteen foot ladder, this Court *595 granted Southern Louisiana Insulations' motion for summary judgment:
(Upon) reviewing the evidence, we agree with the trial judge that there is no genuine issue of material fact concerning whether SLI or any of its employees committed an intentional act which resulted in Davis' injury or his subsequent death. Certainly, there is no evidence that anyone had an active desire to harm the plaintiff. Additionally, there is no indication that anyone was aware injury to to the plaintiff was `substantially certain' to result from his doing his work without the proper safety equipment. Plaintiff's mere conclusory statements in her petition that SLI employees had such an awareness are insufficient to defeat the motion for summary judgment in the absence of any evidence to that effect.
Martin Marietta did not avoid safety measures; rather, management had the Mag Hammer checked by safety inspectors in accordance with company policy immediately before Dycus' accident. The safety people and the engineer repaired the Mag Hammer by changing the cable between the capacitor and the hammerhead. Certainly the conduct of the employer in this case is not as culpable as the conduct of the employers in the cases described above, in which the employers' conduct was held not to rise to the level of an intentional act. The Louisiana Supreme Court has kept the "substantial certainty" test within strict bounds by requiring plaintiffs to allege a specific intentional tort. Dycus fails to make such a claim. Even if Martin Marietta was negligent in allowing Dycus to operate a dangerous piece of equipment, it cannot be concluded that Dycus' injury was substantially certain to follow. Therefore, Martin Marietta's motion for summary judgment is affirmed.
AFFIRMED.