573 So.2d 1284 (1991)
Rubin L. HUDSON, et al.
v.
BOH BROS. CONSTRUCTION CO., INC., et al.
No. 90-CA-0638.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1285 Harry E. Forst, New Orleans, for plaintiffs/appellants.
John E. McAuliffe, Jr., New Orleans, for defendants/appellees.
Before BARRY, WILLIAMS, and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiff Rubin L. Hudson seeks reversal of the trial court's judgment directing a verdict in favor of defendants Boh Brothers and John Kamphaus.

Procedural History
Hudson injured his back October 29, 1985, when he fell on a hole in the wooden bed of the trailer of an 18-wheeler he drove for defendant Boh Brothers. He sued Boh Brothers and his supervisor, Kamphaus, in tort, claiming that his injury was a result of an intentional act on the part of the defendants, and that he therefore was not bound by the exclusive worker's compensation remedies established by LSA-R.S. 23:1032. After the plaintiff rested his case at trial, the trial judge granted the defendants' motion for a directed verdict, dismissing plaintiff's cause of action. This appeal followed.

Standard of Review
La.C.C.P. art. 1810, which is the provision which allows a party to move for a directed verdict, fails to set forth the standard for granting the motion. This court has stated as follows:
[T]he jurisprudence has evolved various standards to be applied by the trial judge in granting or denying a motion for a directed verdict. If in viewing the facts in a light most favorable to the party opposed to the motion, the trial court concludes that the evidence is such that reasonable and fairminded men cannot arrive at a verdict in favor of the party opposing the motion then the motion to dismiss is properly granted. As a practical matter, this very strict standard in favor of the party opposed to the motion will be successful only when there is absolutely no evidence contained in the record which contradicts the movers [sic] evidence or which supports the opposing party's case.
O'Dowd v. Correa, 464 So.2d 885, 887 (La. App. 4th Cir.1985). (Citations omitted.) Therefore, in reviewing a trial court decision granting a motion for a directed verdict, we must review the facts in the light most favorable to the party opposing the motionin this case, the plaintiff.

Facts
The evidence presented at trial established the following facts, viewed in the light most favorable to the plaintiff:
Hudson went to work for Boh Brothers as a truck driver about five or six months prior to the accident. When he first started working there, he noticed that the oak beds of the 18-wheeler trailers which were attached to the truck he drove contained *1286 numerous large holes caused by the heavy equipment routinely carried on the trailers. Some of the trailers contained as many as seven holes; some of the holes were as large as two foot by two foot. The holes had existed for an unknown period of time.
The plaintiff and the other truck drivers were responsible for maintaining their trucks; i.e., changing the oil, greasing the engine, etc. They were allowed to temporarily cover the holes in the trailers with pieces of plywood, but had to get permission from Kamphaus and secure a purchase order or work number before getting the plywood. They would nail the pieces of plywood, in whatever size they could get, over the holes. However, the plywood normally did not stay in place because of the vibrations of the trucks combined with the fact that the surface of the trailer bed, where the plywood was nailed, was often rotten and would not hold the nails. Additionally, the plywood was often knocked loose during the loading process. The problems with the temporary patching were compounded by the fact that the heavy equipment carried on the trucks quickly punched holes in the plywood. Another problem was that the drivers often did not have time to make the needed temporary repairs.
The truck drivers had to walk on the beds of the truck while the trucks were being loaded with cranes in order to direct the loading. One of the plaintiff's co-truck drivers, Odell Leverett, stated at trial that they do not have time to worry about the condition of the truck beds during the loading process because they have to concentrate on "landing the load" and on "staying alive." Kamphaus admitted that he was aware of the fact that the men had to walk on the trailer beds in order to do their jobs.
The plaintiff stated that he complained to Kamphaus about the condition of the trailer beds within about three weeks of going to work for Boh Brothers and that he complained regularly during the six months prior to the accident. Leverett and another truck driver, Glen Oubre, stated at trial that they had been complaining about the trailer beds for years prior to the accident, and that Kamphaus always said that he would "take care of it." Both the plaintiff and Leverett testified that they also complained to Raymond Arcement, the safety engineer for Boh Brothers, about the condition of the trailers. Approximately three weeks to a month prior to the accident, Kamphaus ordered wood to repair the trailer beds, but only one of the trailer beds had actually been repaired. The plaintiff and Leverett testified that they offered to repair the trailer beds themselves during a "slow period," but that Kamphaus had refused to give them permission to do so. The plaintiff stated that Kamphaus told him that the truck drivers could not repair the trailer beds because they were paid by the hour and the repairs would have to be made by someone on salary. Because the repairs were not made, some of the wood sat in the yard and rotted.
About three weeks prior to the accident which forms the subject of the instant lawsuit, the plaintiff's leg was cut when he stepped on the bed of one of the trailers. Because of a rusted bolt, a board on which he stepped flew up and hit him in the leg. He reported the accident to Kamphaus.[*]
On the morning of the accident, the weather was very bad and lighting conditions were poor. The plaintiff arrived at work early to prepare his truck for a trip to Baton Rouge. He had left work early the day before and someone had apparently used his trailer after he left. The four by *1287 fours used to tie down equipment had been left loose and the plaintiff was moving them to the back of the trailer when he stepped into a hole on the trailer bed. In trying to keep the four by four he was carrying from falling on top of him, he fell backwards, hitting his back on another four by four, which was lying on the floor of the trailer.

Intentional Tort
LSA-R.S. 23:1032 generally provides that an employee's exclusive cause of action against his employer for injuries sustained during the course and scope of employment lies in worker's compensation. However, the second paragraph of the statute excludes injuries caused by intentional torts from the exclusivity provision.
The seminal Louisiana Supreme Court case interpreting LSA-R.S. 23:1032 is Bazley v. Tortorich, 397 So.2d 475 (La. 1981), in which the court stated as follows:
The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.
Id. at 481. Thus, the Louisiana Supreme Court has established two methods by which the plaintiff in a suit based on intentional tort can prove intent: (1) by presenting evidence to prove that the employer (or his servant, for whom he is vicariously liable) consciously desired the injury suffered by the plaintiff, or (2) by presenting evidence to prove that the employer knew that the plaintiff's injury was "substantially certain" to result from the conduct. Therefore, the "substantially certain test" is simply an alternative method for proving intent to a showing that the employer actively desired the injury, not an alternative to proving intent. Dycus v. Martin Marietta Corp., 568 So.2d 592, 594 (La.App. 4th Cir.1990). Thus, the plaintiff is not required to prove that the actor intended that his actual injuries occur as a result of the conduct; the employer's liability will extend to all consequences of the intentional act, even those not intended by the actor. Fricke v. Owens-Corning Fiberglas Corp., 571 So.2d 130, 132 (La.1990).
However, the plaintiff in the instant case failed to meet his burden of proof, under either of the two standards detailed above, that his employer or his supervisor committed an intentional act which resulted in the injury to his back. Hudson did not allege, and did not attempt to prove, that the employer "actively desired" his injury; he relies on his allegations that the injury was "substantially certain" to occur as a result of the employer's failure to replace wood in the trailer beds. The evidence presented at trial falls far short of proving those allegations, even when considered in the light most favorable to the plaintiff.
The plaintiff places great emphasis on the evidence which showed that the truck drivers had complained to Kamphaus numerous times concerning the condition of the trailer beds. However, it is well settled that the failure to correct unsafe working conditions is insufficient proof of an intentional tort for purposes of LSA-R.S. 23:1032. Dycus, supra, 568 So.2d at 594. Even when the failure to maintain safe working conditions makes the occurrence of an accident likely, they are considered to "fall short of indicating that injury to plaintiff was inevitable or substantially certain to occur." Id., citing Hood v. South Louis Medical Center, 517 So.2d 469, 471 (La. App. 1st Cir.1987).
Even conduct of a much more culpable nature on the part of an employer is insufficient to prove an intentional tort. In Davis v. Southern Louisiana Insulations, 539 So.2d 922 (La.App. 4th Cir.1989), this court stated as follows:
In opposing the motion [for summary judgment], the plaintiff places special emphasis on [the employer's] statements that doing the job without the proper equipment was "a good way to get killed." However, the fact that an employer or its employees should have known that an act could cause harm to the plaintiff has been held insufficient to *1288 prove an intentional tort. In fact, this court has held that an employer's failure to provide even specifically requested safety equipment is not an intentional tort for purposes of the exception to the workers' compensation exclusivity rule in LSA-R.S. 23:1032. Even proof of the fact that a worker was ordered by his employer to work in an unsafe place has been considered insufficient to prove an intentional tort. Certainly the conduct of the employer in this case is not even so culpable as the conduct of employers in the cited cases which was held not to rise to the level of an intentional act. Proof that an employer's conduct was negligent, even grossly negligent, is simply inadequate.
Id. 539 So.2d at 924. (Citations omitted.) See also, Dycus, supra, at 595. The link between the defendant's "intentional" conduct and the plaintiff's injury must be very strong. Williams v. Gervais F. Favrot Co., 573 So.2d 533 at 541 (La.App. 4th Cir.1991). This circuit has previously held that a plaintiff's allegations that the defendant disregarded OSHA safety regulations and used both deficiently-designed material and machinery did not state a cause of action in intentional tort. Cortez v. Hooker Chemical & Plastics Corp., 402 So.2d 249 (La.App. 4th Cir.1981). Recently, the second circuit held that evidence that an employer intentionally disregarded both OSHA standards and a state statute in failing to provide safety equipment was insufficient proof of an intentional tort. Gray v. McInnis Bros. Const., Inc., 569 So.2d 656 (La.App. 2d Cir.1990).
Even when viewed in the light most favorable to the plaintiff, the evidence presented by Hudson in the instant case was insufficient to establish that the employer Boh Brothers or the supervisor Kamphaus committed an intentional tort for purposes of LSA-R.S. 23:1032. "Reasonable and fairminded men" presented with the same evidence would conclude, as the trial judge did, that there was "absolutely no evidence" to support the plaintiff's theory of the case. Thus, the motion for directed verdict was properly granted.

Conclusion
For the above and foregoing reasons, the trial court judgment granting the motion for directed verdict in favor of defendants Boh Brothers and John Kamphaus and against plaintiff Rubin Hudson is affirmed.
AFFIRMED.
NOTES
[*] It should be noted that Kamphaus was cross examined by plaintiff's attorney as a part of the plaintiff's case in chief. Kamphaus' testimony was contradictory to the facts as stated here on a number of issues. For example, Kamphaus stated that he did not remember receiving complaints from the truck drivers concerning the condition of the trailer beds. Additionally, Kamphaus stated that the truck drivers did not have to get his permission to make temporary repairs to the trailer beds with plywood. Kamphaus also stated that the beds of the trailers were being replaced as quickly as possible at the time of the accident. Kamphaus stated that he was not aware of the accident which resulted in the cut to the plaintiff's leg. That testimony is not detailed in the main portion of the opinion because the facts are being considered in the light most favorable to the plaintiff.