# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 08-473


**RAYWOOD JOSEPH BROUSSARD**

**VERSUS**

**TERRY SMITH, ET AL.**


********** 

## APPEAL FROM THE
### SIXTEENTH JUDICIAL DISTRICT COURT
### PARISH OF ST. MARTIN, NO. 65510
### HONORABLE EDWARD LEONARD  JR., DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.[*], Judges.

**ROY, SR., Judge, dissents and assigns written reasons.**

**AFFIRMED.**


**H. Douglas Hunter**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell**
**P. O. Drawer 1329**
**Opelousas, LA 70571-1329**
**(337) 948-8201**
**Counsel for Plaintiff/Appellant:**
**Raywood Joseph Broussard**

**James Louis Daniels**
**Ringuet, Daniels & Collier**
**P. O. Box 52647**
**Lafayette, LA 70505**
**(337) 232-0002**
**Counsel for Defendant/Appellee:**
**Food-N-Fun, Inc.**

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

This appeal arises from a grant of summary judgment by the Sixteenth Judicial District Court, finding that no genuine issue of material fact remained as to whether worker's compensation benefits are the exclusive remedy available to appellant, Raywood Broussard (hereinafter "Broussard"). Broussard is the biological father of the children of Jeri Lynn Gary (hereinafter "Gary"), who was murdered while working for Food-N-Fun, Inc. D/B/A Player's Club (hereinafter "Player's Club").

Player's Club is located in a "high crime" area on the outskirts of Cade, Louisiana. Employees at Player's Club often worked alone and handled large amounts of cash taken from video poker machines in the club. This cash was kept in a safe behind the bar and was in full view of the patrons.

Charlene Babineaux (hereinafter "Babineaux"), manager at Player's Club, voiced concerns to her employer about her and her fellow employees' safety. Babineaux objected to the removal of a video monitoring system at Player's Club, and specifically voiced concern that sooner or later somebody would rob the safe.

At 9:30p.m. on July 16, 2001, Terry Smith (hereinafter "Smith"), a frequent patron at Player's Club, crushed Gary's skull with a fire extinguisher, removed the key to the safe from her body, and stole $8,000.00 from the safe behind the bar. The murder was discovered sometime later when another patron entered Player's Club and saw the crime scene. Broussard asserts that, after having been warned of the danger, Player's Club's failure to provide a safer working environment was an intentional act that caused Gary's death.

Broussard appeals the trial court's grant of summary judgment in favor of Player's Club and presents one central assignment of error.

**ASSIGNMENT OF ERROR:**

Did the trial court err in finding that there was no genuine issue of material fact and granting Player's Club's motion for summary judgment?

**Summary Judgment**

Broussard asserts that the trial court erred in granting Player's Club's motion for summary judgment, because there remained a genuine issue of material fact as to whether Player's Club's action constituted an intentional tort. We disagree.

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).

*Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 3 (La. 11/29/06), 950 So.2d 544, 546-47. "Appellate courts review summary judgments *de novo* under the same criteria that governed the trial court's consideration . . . ." *Spera v. Lyndon Prop. Ins. Co.*, 00-1373, p. 2 (La.App. 3 Cir. 3/7/01), 788 So.2d 56, 58-59. Thus, summary judgment in this case is only appropriate if, upon review of the record before us, we find that there is no genuine issue as to whether Player's Club's actions constituted an intentional tort.

Generally, when a worker seeks to recover from her employer for injuries suffered during the course and scope of employment, recovery is limited through the Louisiana Workers Compensation Act, La.R.S. 23:1032, which provides immunity from civil liability in favor of an employer. *Cole v. State, Dept. of Pub. Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So.2d 1134, 1138.

La. R.S. 23:1032(A)(1)(a) provides, in pertinent part:

2

> Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

In interpreting the Workers Compensation Act, the Louisiana Supreme Court has held that:

> [C]ompensation shall be an employee's exclusive remedy against his employer for an unintentional injury covered by the act, but that nothing shall prevent an employee from recovering from his employer under general law for intentional tort.

*Caudle v. Betts,* 512 So.2d 389,390 (La.1987).

The "intentional act" loophole is the only exception to the Workers Compensation Act, and courts interpret this exception narrowly. *Bridges v. Carl E. Woodward, Inc.,* 94-2675 (La.App. 4Cir.10/12/95), 663 So.2d 458,463, writ denied, 95-2735 (La.1/26/96), 666 So.2d 674.

In order to prevail in a case such as the one presented here, Broussard must show that Player's Club's failure to take action to insure Gary's safety "was an intentional action which was 'substantially certain' to result in injury to the plaintiff." *Id.* "Substantially certain" has been held to mean "nearly inevitable," "virtually sure," and "incapable of failing." *Belvens v. Time Saver Stores, Inc.,* 99-383, p. 3 (La.App. 5 Cir. 10/26/99), 746 So.2d 191, 193 (citing *Jasmin v. HNV Cent. Riverfront Corp.,*

3

94-1497, p.1 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, 312-313, *writ denied*, 94-2445, 647 So.2d 1110. Lesser degrees of certainty, such as "reasonably foreseeable," and "should have known," may raise issues of negligence or gross negligence, but do not constitute an "intentional act," as required to recover outside of the workers compensation act. *Adams v. Time Saver Stores, Inc.*, 615 So.2d 460, 461-62 (La.App. 4th Cir.1993), *writ denied*, 617 So.2d 910 (La.1993).

Player's Club may have been negligent in removing the video surveillance equipment and failing to take adequate safety measures. However, "Louisiana Courts have held that an employer's failure to provide even specifically requested safety equipment is not an intentional tort for purposes of the exception to the worker's compensation exclusivity rule." *Dycus v. Martin Marietta Corp.,* 568 So.2d 592, 594 (La.App. 4 Cir.1990), *writ denied*, 571 So.2d 649 (La.1990), (citing *Jacobsen v. Se. Distrib., Inc.*, 413 So.2d 995 (La.App. 4t Cir. 1982), *writ denied*, 415 So.2d 953 (La.1982)). Furthermore, this court has specifically held that, "[a]n injury can not be considered as intentionally caused merely because there exists a high probability of an injury occurring. . ." *Mahfouz v. J.A.C.E. Oilfield Sales & Service Inc.*, 569 So2d 1074,1077 (La.App. 3 Cir. 1990) (citing *Hood v. South Louisiana Med. Ctr.*, 517 So.2d 469 (La.App. 1 Cir. 1987)).

Player's Club's lack of concern for the safety of its employees is unconscionable. While this callous indifference is regrettable, it is clear from the record that Player's Club did not have an active desire to harm Gary. Therefore, the record supports the finding of the trial court that there is no genuine issue of material fact that could possibly allow the court to conclude that Player's Club acted intentionally to harm Gary. Neither are the complaints and knowledge of Player's

4

Club manager, Babineaux, sufficient to confer upon Player's Club the requisite intent to satisfy the exception to the workers compensation exclusivity rule.

## CONCLUSION:

For the above-stated reasons, we affirm the decision of the trial court in all respects. All costs are to be shared equally between the parties.

**AFFIRMED.**

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

RAYWOOD JOSEPH BROUSSARD ON BEHALF OF HIS MINOR CHILDREN, BLAISE PAUL BROUSSARD AND LUCY RENE BROUSSARD

VERSUS

FOOD-N-FUN, INC. D/B/A PLAYER'S CLUB

**ROY, Judge, (pro tempore) dissents and assigns written reasons.**

La.R.S. 23:1032(A) and (B) state:[1]

A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.

. . . .

B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

---

[1] Prior to the 1976 amendment, the statute read: "The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representative, dependents, or relations."

Thus, pursuant to La.R.S. 23:1032, as amended by Act 147 of 1976, an employee's exclusive remedy for work-related injuries is in worker's comp unless the employee can prove that the claim is based on an intentional tort. Act 147 served to expand the list of defendants to co-employees (not just employers) granted immunity from suits by injured employees such that worker's compensation would be the exclusive remedy unless the intentional tort exception applied.

It is clear that both the appellate and supreme courts of this state have followed a very narrow interpretation of what constitutes an "intentional tort," since the supreme court's pronouncements in the seminal case of *Bazley v. Tortorich*, 397 So.2d 475 (La.1981), placing an extremely high burden of proof on a plaintiff. As one commentator noted, "the burden of proof on the element of intent in a criminal case is lower than the corresponding burden in a workers' compensation case." *Louisiana Worker's Compensation Scheme: Substantially Certain to Result in an Unsafe Workplace,* 50 Loy.L.Rev. 209, 227 (2004). I would note that in the cases prior to the 1976 amendment an employer was afforded no protection from being sued in tort when an employee was injured by another employee, whereas since the amendment and the *Bazley* decision and its progeny the pendulum has swung in the complete opposite direction shielding employers from liability under nearly every circumstance. This system certainly does not represent a balance of the interests of the employer and the employee, but places the inherently more vulnerable party, the employee, at an extreme disadvantage.

In *Bazley*, 397 So.2d 475, the plaintiff employee alleged negligence on the part of a co-worker, not the employer. In my view, an allegation that the employer is the tortfeasor, rather than a co-employee, merits a different analysis than

2

that of a co-employee. While a social policy protecting employers from its employees' negligence toward other employees is favorable, I find that the same cannot be said about the employer as the intentional tortfeasor. In *Bazley*, the supreme court defined an intentional act as being the same as an intentional tort, stating:

> In drawing a line between intentional and unintentional acts we believe the legislative aim was to make use of the well established division between intentional torts and negligence in common law.
>
> . . . .
>
> . . . .
>
> The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.

*Id.* at 480-481 (citations omitted).

The supreme court went on to state that Louisiana civil and criminal codes affirm the legislative acceptance of the meaning of "act" or "intent" stating that "'intent' is present when the offender either desires the consequences of his act or when he *knew that the consequences were reasonably certain to result from his act.*" *Id.* at 481. Moreover, "[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Id.* at 482 (citation omitted).

Yet, the jurisprudence is replete with cases in which, under any reasonable interpretation of the terms "substantially certain to result," the courts have found that the employer's act were not intentional. In fact, courts have classified just what "substantially certain to result" does not include:

As we noted in *Jasmin* [*v. HNV Central Riverfront Corp.,* 94-1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311], "[n]ationwide, policy considerations reflect that the employer's conduct must go beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work in order to constitute an intent to injure under the exception." *Jasmin,* 94-1497 at p.2, 642 So.2d at 313.

Although a case-by-case analysis is required, Louisiana courts have distilled four dangerous work place situations that almost universally do not form the basis for an intentional act; to-wit:

1. Failure to provide a safe place to work;

2. Poorly designed machinery, failure to follow OSHA safety provisions;

3. Failure to provide requested safety equipment;

4. Failure to correct unsafe working conditions.

*Zimko v. American Cyanamid*, 03-0658, p.13 (La.App. 4 Cir. 6/8/05), 905 So.2d 465, 477, *writ denied*, 05-2102 (La. 3/17/06), 925 So.2d 538, citing William E. Crawford, *Louisiana Civil Law Treatise, Tort Law* 23.3 (2000) (citing *Micele v. CPC of Louisiana, Inc.*, 98-0044 (La.App. 4 Cir. 3/25/98), 709 So.2d 1065, *writ denied*, 98-1116 (La. 6/5/98), 720 So.2d 686..

If that is the case, there can be no point in providing the second prong of this definition as there is no behavior that would qualify under the stringent "substantially certain to result" test. One has to wonder if the legislature intended a social policy which encourages employers to neglect the safety needs of its workers by placing their workers in unnecessary extremely high-risk dangerous situations, knowing that they will receive the full protection of the law in worker's comp.

In this case, the Player's Club had one petite woman in charge of a bar equipped with three video poker machines. It was commonly known that the safe located in the bar and in full view of the patrons contained large amounts of money

4

in order to be able to pay out winnings from the video poker machine. Gary kept the key to the safe on her person which was also in full view of all of the patrons in the bar. Moreover, what little security did exist, the owner removed. The two security cameras, which may have deterred someone from committing a crime, were taken out of the bar. Additionally, there was evidence to suggest that the area was poorly lit and was a known crime area. Finally, Gary's own manager, Charlene Boudreaux, testified that she told the owner that she was fearful for her and the other employees' safety due to the lack of security measures at the Player's Club and that a robbery was inevitable.

The fact that an employee expresses to a higher level supervisor that she is afraid for her safety has been a factor designated as one that proves that the employer knew that an employee's injury was "substantially certain to result." In *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir. 6/27/03), 865 So.2d 98, 108, *writ denied*, 03-2581 (La. 11/26/03), 860 So.2d 1139, the court distinguished the facts of that case from the supreme court's opinion in *Reeves v. Structural Preservation Systems,* 98-1795 (La.3/12/99), 731 So.2d 208, finding that the plaintiff employees "testified that they were very much concerned for their safety and expressed those concerns on numerous occasions" to the supervisor.[2] In *Robinson*, an apparent anomaly in the cases regarding the intentional tort exception, the appellate court affirmed the jury's finding that the employer's act was intentional. Although the employer argued that *as a matter of law* its conduct did not rise to the

---

[2]In *Reeves*, a jury found an employer committed an intentional act when it instructed its employee to move a sandblasting pot which had an OSHA required sticker on it that read "DO NOT MOVE MANUALLY." Further, the employee's supervisor testified that he feared that someone would eventually get hurt. The appellate court affirmed the jury's findings. The supreme court reversed finding that the jury committed manifest error because its finding that an intentional act had occurred was not reasonable in light of the record.

5

level of an intentional act, the *Robinson* court noted that it was limited to a manifest error review of the jury's finding.

Both the trial court and the majority of this court noted the "unconscionable" nature of the Player's Club's lack of concern for its employees' safety. The trial court made the following factual findings in its judgment:

> The evidence shows that the defendant did not provide proper security for its employee, Ms.Gary. The Player's Club was connected to the remainder of the store, but there was no access from one area to the other except from the outside. Security cameras and/or monitors, is present, were not adequate. The procedure for handling large amounts of cash were not safe or adequate.

Thus, the question remains, if an act/inaction of employer rises to the level of being "unconscionable" in that it shows utter disregard for human safety knowing full well that certain easy measures could have been taken (i.e. moving the safe, having security cameras present, having a security guard, etc.) to substantially reduce the chance of an employee being injured or killed, what more should a plaintiff have to prove in order to meet the "substantially certain to follow" test? Moreover, what social policy is being advanced by allowing employers to behave in such a unconscionable way?

For these reasons, I respectfully dissent from the majority's opinion and would reverse the summary judgment in favor of the defendant-appellee in order to allow this issue to be presented before a jury.