615 So.2d 460 (1993)
Ann S. ADAMS
v.
TIME SAVER STORES, INC., CNA Insurance Company, et al.
No. 92-C-1339.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1993.
Writ Denied May 7, 1993.
Thomas P. Anzelmo, Lisa Miley Geary, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for defendants/relators.
Richard A. Tonry, Michael C. Ginart, Jr., Chalmette, for plaintiff/respondent.
Before BARRY, BYRNES, CIACCIO, WARD and JONES, JJ.
BYRNES, Judge.
This opinion originated from a writ and is rendered pursuant to a remand from the Supreme Court for briefing and an opinion.
Ann Adams was employed by Time Saver Stores, Inc., as an associate manager in February of 1989. On February 4, 1989 Ms. Adams was working the evening shift from 11:00 p.m. until 7:00 a.m. of the following *461 day. In the early morning hours of February 5, 1989 two male customers entered the Time Saver store.
As Ms. Adams rang up a purchase for one of the customers, the other approached her from behind. The customers, William Williams and Ferdie Patterson, took Ms. Adams from the store at knife point, drove her to a secluded place, sexually assaulted her, and returned her to the store around 7:00 or 7:30 a.m. Time Saver paid worker's compensation benefits and medical expenses to Ms. Adams.
Ann Adams filed suit against Time Saver and its alleged liability insurer, improperly named as CNA Insurance Company, and against Williams and Patterson. The district court originally granted Time Saver's and CNA's Motion for Summary Judgment based on no opposition. However, on Ms. Adams' Motion for New Trial, the court took the matter under advisement, then denied summary judgment without reasons.
On July 28, 1992 this Court denied supervisory writs over one dissent. The Supreme Court granted a supervisory writ, then remanded to this court for briefing and an opinion.
It is undisputed that Ann Adams was in the course and scope of her employment at the time of the robbery. An employee is limited to Louisiana Worker's Compensation Act benefits for personal injury by accident arising out of and in the course of employment with or without fault." LSA-R.S. 23:1021, 23:1031, 23:1032. However, the employee may bring a tort action if the employer causes the injury by an "intentional act." LSA-R.S. 23:1032(B).
Ms. Adams argues that although Time Saver may not have specifically desired that she be the victim of this assault, Time Saver's acts and omissions were such that the result was substantially certain to follow and, therefore, constitutes an "intentional act." Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981).
Plaintiff has alleged:
1. This was the first time she ever worked the graveyard (11:00 p.m. to 7:00 a.m.) shift.
2. That when assigned to that shift she protested and indicated that she was afraid to work that shift and at that store.
3. That no security monitors or alarms were provided in that particular store, even though they were provided in other stores, and that Ms. Adams had requested that they be provided where she worked.
4. That nine (9) armed robberies occurred at that store within the past five (5) years.
5. That five (5) armed robberies that occurred in that store during the last five (5) years immediately preceded Mardi Gras, a time of increased criminal activity.
6. That numerous other crimes and incidents, including shoplifting, gang fights and simple robberies had occurred at that store indicating that it was in a high crime area.
7. That armed security guards had been assigned to that store but were removed before Mardi Gras and the date of the armed robbery of Ms. Adams.
8. That shortly before Ms. Adams was raped another employee at the store had been the victim of a simple robbery. Still no security guard had been reinstated at the store.
9. That an armed robbery of the store occurred only 34 days before Ms. Adams was raped.
Even if we accept all of these allegations as true, they are not sufficient to constitute an "intentional act." Time Saver is entitled to summary judgment as a matter of law.
"Substantial certainty" is not an alternative to "intentional act" but a method of proving that the act was intentional. Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4 Cir.1990), writ denied, 571 So.2d 649 (La.1990).
Therefore, terms such as "reasonably foreseeable", "likely to occur" and *462 "should have known" may raise issues of negligence, or gross negligence but do not amount to "intentional" as that term is used in the Worker's Compensation Act.
We agree with Regan v. Olinkraft, Inc., 408 So.2d 937, 940 (La.App. 2 Cir.1981) writ denied, 412 So.2d 1095 (La.1982):

"Bazley requires that the result be at least "substantially certain." "Substantially" means about, practically, nearly, almost, essentially or virtually. St. Louis-Southwestern Railway Company v. Cooper, 496 S.W.2d 836 (No. 1973); American Fed. of Government Emp. AFL-CIO v. Rosen, 418 F.Supp. 205 (N.D.Ill.1976). Websters includes "sure" and "inevitable" among its definitions of "certain." The language of Bazley then might be restated as "virtually sure" or "nearly inevitable."[1]
In Bazley v. Tortorich, 397 So.2d 475 (La.1981) the court stated that:
"Courts in most states imposing such statutory or common law penalties for intentional misconduct have required the commission of a genuine intentional tort and have refused to stretch liability to include negligence, recklessness, or constructive intent." (Emphasis added.) 397 So.2d at 480.
* * * * * *
"... [P]laintiff's interpretation would thwart the legislative objective of broadening the class of defendants to be granted tort immunity. Instead, Act 147 of 1976 would have the reverse effect of restricting the exclusive remedy rule to claims of employees injured without any other person's fault. Any employee could bring suit and recover under Article 2315 by pleading and proving that his injury was negligently caused by the voluntary conduct of his employer or co employee.... In the absence of a clearer expression of legislative design to curtail drastically the workers compensation system, we cannot attribute such aims to the lawmakers. 397 So.2d at 482.
In Caudle v. Betts, 512 So.2d 389, 391 (La.1987) the court stated:
"... [W]hen an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder."
In referring to "the particular intentional tort" in Caudle and "specific intentional tort" in Armstead v. Boh Bros. Construction Co., Inc., 609 So.2d 965 (La.App. 4 Cir.1992) it was not meant that plaintiff be required to pigeon-hole the tort or designate a specific traditional intentional tort by name in her pleadings; merely that plaintiff plead with sufficient specificity facts that have the attributes of an intentional act or tort as those terms have been understood traditionally in conformity with the intention of the legislature; as opposed to a broader definition of intentional act that would include foreseeable injury from known workplace hazards, but no actual desire on the part of the employer that such injury should occur.
Likewise, the reference to "traditional intentional tortssuch as battery, assault, false imprisonment, etc." in Dycus, 568 So.2d at 594 was not an attempt to limit claims to a predetermined list of labels, but to provide a non-exclusive group of examples of intentional torts in order to make it clear that the act or tort complained of must have one of the following characteristics:
1. The harmful consequence must be desired; or
2. Although the harmful consequence was not intended, the act must be one that could normally be expected to invade the interests of another, Claudle, 512 So.2d 389, 391, and is the direct and immediate physical cause of the resulting damage, e.g., striking someone in jest with no intention to cause serious injury, but serious injury does in fact result.
*463 The violence that was perpetrated upon Ms. Adams and the allegations of employer fault, if proven, are egregious. However, the legislature intended to include situations where employer fault results in violent injury to an employee when it enacted the Workers Compensation Act. LSA-23:1021(1) specifically says "... violently, with or without human fault" and LSA-23:1021(7)(a) refers to "injuries by violence."
The legislature has revisited the Worker's Compensation Act on countless occasions over the years and the question of known workplace hazards is so obvious that had the legislature intended to provide the relief requested by Ms. Adams it could easily have added after the words "intentional act" in LSA-R.S. 23:1032 the phrase "or the failure to take reasonable steps to correct or prevent a known hazard in the workplace to the extent practicable."[2] The coverage of the act was intended to be interpreted liberally, the exceptions narrowly. Bazley, supra; Weber v. State, 608 So.2d 1016 (La.App. 3 Cir.1992). This means that even if the term "intentional" evolves to have a broader meaning in general tort law, it would not give this court license to subvert the clear meaning of the legislature by expanding the scope of the exceptions to the Worker's Compensation Act by redefining the term intentional.
In Weber, supra, the court relied on Bazley v. Tortorich, Caudle v. Betts, and Dycus v. Martin Marietta, in maintaining the employer's exception of no cause of action in the face of allegations of intentional tort and provided an excellent analysis of the rationale of the Worker's Compensation Law which we adopt as our own:
The Worker's Compensation law is a fair exchange. On one hand the employer's liability exposure for unintentional acts is fixed in amount for personal injury by accident arising out of an in the course of employment. The employee's part of the bargain is that he or she is entitled to fixed benefits for personal injury under such conditions regardless of the employer's lack of fault. See 44 La.L.Rev. 1507 (1984).
Courts are to liberally construe the act:
The compensation statute, with its amendments, was designed to cover all employees who might reasonably be brought under its paternalistic protection. In [Dick v. Gravel Logging Company, 152 La. 993, 95 So. 99 (1922) ], the court said that the statute is humane in its purpose and that its scope should be enlarged and its provisions liberally construed so as to include all services that can reasonably be said to be within the said statute. If it is to be liberally construed so as to include all possible persons when they seek its protection, surely it would not do to say that the provisions of the statute should be restricted when persons, in order to recover in tort, are attempting to have themselves excluded from he coverage of the statute. Spanja v. Thibodeaux Boiler Works, 2 So.2d 668, 672 (La.App.Orl.1941). Id. 608 So.2d at 1018.
The issue here is whether the defendants' actions were intentional acts which *464 fall under the exception to the compensation act. In the instant case, Ms. Adams alleges that Time Saver knowingly failed to provide her with a safe place to work. This may be negligence or even gross negligence. However, as illustrated in Hood v. South Louisiana Medical Center, 517 So.2d 469 (La.App. 1 Cir.1987), failure to maintain safe conditions in the workplace may give rise to conditions "which, at most, could be said to have made the occurrence of an accident likely, but the circumstances fall short of indicating that injury to plaintiff was inevitable or substantially certain to occur." Id. at 471. More recently, in Suarez v. American Pecco Corp., 608 So.2d 294, 297 (La.App. 4 Cir.1992) this court followed Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806 (La.App. 4 Cir.1991) and reversed the trial court's denial of summary judgment:
Mere knowledge and appreciation of a risk does not constitute intent. Reckless or wanton conduct by an employer does not constitute intentional wrongdoing. Gross negligence, disregard of safety regulations or the use of safety equipment is not sufficient. Williams v. Gervais F. Favrot Company, Inc., 573 So.2d 533 (La.App. 4th Cir.) writ denied 576 So.2d 49 (La.1991). National, policy considerations reflect that the employer's conduct must go beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work in order to constitute an intent to injure necessary under the exception. Id. at 540, quoting Larson, 2A Workman's Compensation Law, Section 68.13 (1989). Suarez, 608 So.2d at p. 297.
We deny Ms. Adams's claim not because she has failed to designate a specific intentional tort by name, which as we have discussed above is not required; but because her allegations raise only the question of negligence. Because of the exclusive nature of the worker's compensation remedy the defendants' negligence is not a material issue. The intentional act exception of LSA-23:1032 was never intended to make employers liable in tort for the random, independent, intervening, intentional acts of unrelated, unknown third parties such as the malefactors who so viciously abused Ms. Adams in this case. Accordingly, for the foregoing reasons the judgment of the trial court is reversed and summary judgment is rendered in favor of defendants, dismissing plaintiff's suit at her cost.
REVERSED AND RENDERED.
BARRY, J., concurs with reasons.
JONES, J., dissents with reasons.
BARRY, Judge, agreeing with the result.
I was the author of Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4th Cir.1991) and wrote at pp. 542:
In my concurrence in Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4th Cir.1982), writ denied 415 So.2d 953 (La.1982) [I] reflected on the harsh statutory reality:
The exclusive remedy rule, though harsh and restrictive, is a fact of life subject to change through the legislative process. In the meantime, seriously injured workers, such as the plaintiff, are relegated to the confines of the compensatory statutes.
In this matter, accepting all of the plaintiff's allegation as true, an intentional tort cannot be proven under our jurisprudence.
JONES, Judge, dissenting:
I respectfully dissent from the majority's opinion.
I agree with plaintiff that a genuine issue of material fact exists as to whether and, if so, to what extent Time Saver knew the absence of security measures at this particular store endangered its employees. Specifically, what motivated Time Saver to remove the security guards that it had previously provided to the store in question. It is not unthinkable, as plaintiff alleges, that Time Saver removed the armed security knowing that it was substantially certain that one of its employees would be injured. I embrace the words of *465 my colleague, Judge Waltzer, when she wrote in dissent,
This writer cannot help but remember other cases in which middle and upper management testified that when the dollar cost of plant or product or working condition safety were weighted by the company against the dollar cost of a worker's compensation premium, a management decision was made not to invest in safety in order to prevent the deaths of two or three of their employees because workmen's compensation premiums were less costly than investing in safety.
Armstead v. Boh Bros. Construction Co., Inc., 609 So.2d 965 (La.App. 4th Cir.1992).
I also agree with the position stated by Judge Waltzer in the Armstead dissent that Bazley v. Tortorich has been misinterpreted. An employer's violation of a safety rule, failure to provide a safety device required by law, or gross negligence on the part of a supervisory employee are intentional wrongs for which the exclusive remedy rule of La.R.S. 23:1032 is inapplicable. In Bazley, the Supreme Court examined the legislature's motives in adopting Act 147 of 1976. It wrote:
After considering broader penalties that would have provided double benefits for an employer's violation of a safety rule, failure to provide a safety device required by law, or gross negligence on the part of a supervisory employee, which caused injury, death or disease, Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20, our legislature chose to impose a sanction for intentional wrongs by making the exclusive remedy rule inapplicable to such acts.
Nor do I find Time Saver's interpretation of the phrase "substantially certain" to be at all reasonable. A reading of "substantially certain" that includes "inevitable" and "incapable of failing", which are absolutes, are synonymous with knowing the consequences that would follow one's conduct. Bazley discusses "substantially certain" as an alternative factor for finding an intentional tort regardless of subjective desire.
The hazards faced by a person working alone in a convenience store in an urban area late at night are self-evident. Aaron v. New Orleans Riverwalk Association, 580 So.2d 1119 (La.App. 4th Cir.1991) writ denied 586 So.2d 534 (La.1991); Knight v. Cracker Barrel Stores, Inc., 597 So.2d 52 (La.App. 1st Cir.1992) writ denied 598 So.2d 377 (La.1992); Brown v. Diversified Hospitality Group, 600 So.2d 902 (La.App. 4th Cir.1992). Combined with plaintiff's other supported allegations regarding Time Saver's knowledge and actions, I am satisfied that by granting summary judgment plaintiff would be deprived of her opportunity to find out whether there was a management decision to subject employees to substantially certain injury for the sake of reducing the costs of doing business.
In defining the intentional act exception, one should not merely look at the distinction between intentional and unintentional conduct. As discussed in Bazley v. Tortorich, by fashioning the exception the legislature was seeking to sanction employers for intentional wrong-doing. Anyone engaged in business has to anticipate the occurrence of accidents. If a business concern elects to do nothing to avoid the occurrence of accidents, such a business decision can only be construed as intentional conduct. Only through a trial could an employee injured as a result of such a business decision expose the decision-making process that created the unsafe workplace. Plaintiff in the instant case is entitled to a trial to attempt to do just that.
For the foregoing reasons, I would affirm the trial court's ruling denying Time Saver's Motion for Summary Judgment.
NOTES
[1] We note that the American Heritage Dictionary, Second College Edition (1991) defines "Certain" in the same sense: Definite; fixed; sure to come or happen; inevitable; established beyond doubt or question; indisputable; unfailing; dependable.
[2] If the legislature wishes to review this area of the law, some of the aggravating factors that might be considered are:

1. The employer's prior actual knowledge as opposed to constructive knowledge of the risk.
2. The likelihood of great bodily harm or death regardless of whether caused by a condition in the workplace or the foreseeable actions of a third party.
3. The physical and economic feasibility of preventing or reducing the likelihood of injury, a standard analogous to that employed by the Americans with Disabilities Act for determining the level of access and services business establishments should be required to provide for the disabled.
4. The deliberate concealment by the employer of the existence of a hazard under circumstances in which the employee could not be expected to learn of the hazard otherwise; and where knowledge of the hazard could have enabled the employee to avoid injury or seek other employment.
5. The employer's actual knowledge of a violation of a safety law or regulation.
6. Instances where the employee may have specifically objected to the very danger that results in injury only to be threatened with the loss of his job.
7. Instances where the employer's deliberate acts increase the hazard that results in harm to the employee.