663 So.2d 458 (1995)
In re Henry Earl BRIDGES
v.
CARL E. WOODWARD, INCORPORATED, DEF Insurance Company, XYZ Manufacturer, and XYZ Insurance Company.
No. 94-CA-2675.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1995.
Writ Denied January 26, 1996.
*459 Pete Lewis, Michelle K. Buford, Lewis & Caplan, New Orleans, for Plaintiff/Appellant.
Joseph G. Gallagher, Jr., Hulse, Nelson & Wanek, New Orleans, for Defendant/Appellee.
Lance S. Ostendorf, Charles E. Sutton, Jr., Campbell, McCranie, Sistrunk, Anzelmo & Hardy, New Orleans, for Intervenor/Appellant.
Before BARRY, BYRNES, PLOTKIN, WALTZER and MURRAY, JJ.
PLOTKIN, Judge.
Once again, we are called upon to decide whether an employer's failure to install a safety warning device constitutes an intentional act entitling an injured employee to bring a tort action. If the employer's omission does not constitute an intentional tort, the employee's remedy is limited to worker's compensation and his tort action should be dismissed.
O.C. Peters, curator for employee Henry Earl Bridges (Bridges), brought this tort suit against Bridges' employer, Carl E. Woodward *460 Inc. (Woodward), alleging that Woodward failed to procure and install and/or alternatively intentionally removed the warning system on a crane which injured Bridges, which constituted an intentional act. American Casualty Co. of Reading, Pennsylvania (American) intervened, seeking recovery of worker's compensation paid to Bridges. Woodward moved for a summary judgment, asserting the statutory employer immunity defense. The trial court granted summary judgment dismissing Bridges' claim and the claims of American. We affirm.

Facts
The following facts are undisputed by the parties. Woodward is a general construction contractor which has been in business in New Orleans for many years. In 1982, Woodward purchased a Grove model RT 522 crane from Wehring-Goss, a Grove distributor. The crane had a telescoping boom, and was rigged with one line for lifting a load. The crane was also equipped with the Kruger anti-two-block warning system.
"Two-blocking" is a phenomenon which occurs when the line is drawn up so the load pulls against the sheave at the end of the boom. Tension develops in the line, which can cause it to break. If the line breaks, the load will fall to the ground. An anti-two-block warning system, such as the Kruger device on this crane, warns the operator when the load nears the end of the boom. Specifically, a warning light flashes, and a horn sounds.
Charles Fuchs, the crane operator, testified that shortly after the crane was purchased, an auxiliary line was installed on the crane. An anti-two-block warning system was not installed on the auxiliary line. In 1985, the crane was being used on a construction site in Baton Rouge. During this job, the anti-two-block warning system on the main line was damaged. This system was not repaired before Bridges' accident. Therefore, at the time of the accident, an anti-two-block warning system was not functioning on either the main line (because it was broken) or the auxiliary line (because it had not been installed).
In 1989, Woodward had a contract with Alton Ochsner Medical Foundation to construct a new facility at its site in Jefferson Parish. The details of this agreement were set forth in the contract and specifications, which are part of the record. Bridges was employed by Woodward as a general laborer. He was working on the Ochsner project at the time of the accident.
Thomas Stengle, Bridges' foreman, and Robert Cummings, another Woodward laborer at the scene, testified by deposition that on December 4, 1989, Bridges was standing in an excavated pit, preparing to spread shells. The shells were being lowered into the pit by a crane operated by Fuchs, who was using a concrete buck attached to the main line to lower the shells. A "headache ball" was attached to the auxiliary, but it was not being used in this operation.
Moments before the accident, Fuchs began to extend, or telescope the boom of the crane. He then perceived the crane beginning to tilt, and he looked in the direction of his right out-rigger. Fuchs continued to extend the boom of the crane. This caused the slack in the auxiliary line to be drawn up so the headache ball attached to this line was pulled against the end of the boom. The auxiliary line broke, and the headache ball fell, striking Bridges on the head. The main line was not involved in the accident. It was the auxiliary line, which never had an anti-two-block warning system on it, which broke, allowing the headache ball to fall.
Fuchs testified that he was an experienced crane operator, having operated cranes since 1970, and had been employed as a crane operator for 19 years at the time of this accident. He had been licensed as a crane operator since 1987. He had operated numerous different cranes during his career. He had never operated a crane with a functioning anti-two-block warning system at any time prior to the accident. He testified by deposition that such warning systems were not common devices, and that he had never had a "two-blocking" accident before the one in this case.
Bridges provided the affidavit of Adm. Ben J. Lehman, USN (Ret.), a professional engineer and certified safety professional. Lehman studied the depositions of Fuchs, Cummings *461 and Stengle, invoices and pamphlets concerning the Grove crane and Kruger anti-two-block device, and photographs of the block, control panel and warning signs. In addition to these documents, Mr. Lehman based his opinion on his education and experience as a professional engineer and certified safety professional. In his opinion, the anti-two-block device should have been mandatory, not optional. The lack of the device on the auxiliary hoist was an immediate cause of Bridges' injury. Lehman issued the following opinion:
It is my considered professional opinion... [that] it is nearly inevitable that a two block situation will occur, having the potential of causing severe damage to the crane itself, to other property, and to persons working near it. Further, it is also my professional opinion that it was virtually certain that damage to the crane and to persons such as [Bridges] would be sustained if the Grove crane involved here were regularly operated without a properly installed, fully functioning and actively engaged anti-two-block device.

Standard for Summary Judgment
Plaintiff contends that summary judgment is not the appropriate procedural device for determining the question of intent.
As a general rule, appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). "A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La.C.C.P. art. 966(B).
A motion for summary judgment is not designed to be a substitute for a trial on the merits. Oller v. Sharp Electric, Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir), writ denied, 457 So.2d 1194 (La.1984). Further, summary judgment may not be used to dispense with a case that is difficult to prove. Holmes v. Pottharst, 557 So.2d 1024, 1026 (La.App. 4th Cir.1990).
When a motion for summary judgment is made and supported with affidavits, depositions, and/or answer to interrogatories, the adverse party may not rest merely on the allegations or denials contained in the pleadings. Poydras Square Associates v. Suzette's Artique, Inc., 614 So.2d 131, 132 (La.App. 4th Cir.1993). Argument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact. Allegations without substance will not support a summary judgment. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues. Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27 (La.App. 4th Cir.1990), writ denied, 572 So.2d 68 (La. 1991).
In determining whether the party moving for summary judgment has satisfied his burden, the papers supporting his position must be closely scrutinized, while the opposing papers are to be indulgently treated. Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4th Cir.1993). All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4th Cir.), writ denied, 629 So.2d 404 (La.1993).
Summary judgment is the appropriate procedural device when the issue of intent is raised. In Mayer v. Valentine Sugars, 444 So.2d 618 (La.1984), the Louisiana Supreme Court held that the exception of no cause of action is not the appropriate procedural device to dispose of a LSA-R.S. 23:1032(B) case when the lack of intent is raised, stating as follows:
Defendant argues that it should be permitted by the exception of no cause of action to penetrate the plaintiff's general allegation of intent to demonstrate that plaintiff's injuries did not in fact result from an intentional act. This is the function of a motion for summary judgment, *462 however, and not that of an exception of no cause of action.
444 So.2d at 620 (emphasis added).
The Louisiana Supreme Court reaffirmed this position in Carey v. UMC, 553 So.2d 472 (La.1989). In that case, the court reversed a dismissal of a LSA-R.S. 23:1032(B) case on an exception of no cause of action, stating that "[t]he merit of plaintiff's claim is to be determined by the finder of fact on motion for summary judgment or trial on the merits." 553 So.2d at 472 (emphasis added). Our courts have consistently concluded that summary judgment is the appropriate procedural method for this type of case. See Landry v. Uniroyal Chemical Co., 94-1274 (La.App. 1st Cir. 3/3/95), 653 So.2d 1199; McKee v. Inspectorale America Corp., 93-1253 (La.App. 4th Cir. 4/14/94) 636 So.2d 305 (Byrnes & Plotkin, JJ. dissenting), writ denied 94-1269 (La. 9/2/94), 643 So.2d 144; Gallon v. Vaughan Contractors, 619 So.2d 746, 748 (La.App. 4th Cir.), writ denied, 625 So.2d 1035 (La.1993); Williams v. Gervais F. Favrot Co., 573 So.2d 533, 541-42 (La.App. 4th Cir.), writ denied 576 So.2d 49 (La.1991) (summarizing some of the many opinions affirming summary judgment on this issue).[1] We hold that summary judgment is the correct procedural device to resolve this issue.

Intentional tort exception
Plaintiff admitted that the defendant was the decedent's statutory employer under the provisions of LSA-R.S. 23:1032(A), which provides that worker's compensation is the exclusive remedy of an employee against his employer or co-employees. However, LSA-R.S. 23:1032(B) provides an exception to this rule as follows: "Nothing in this Chapter shall affect the liability of the employer ... or employee of such employer ... to liability, civil or criminal, resulting from an intentional act." Plaintiff relies on this exception, claiming Woodward intentionally caused his injuries.
In order to prevail at trial, the plaintiff must show that the defendant's failure to install a safety device on the crane was an intentional action which was "substantially certain" to result in injury to the plaintiff. The plaintiff contends that the facts of this case demonstrate that a genuine material issue of fact exists concerning "whether or not [the defendant] knew that by choosing not to repair the damaged system, or install a new one, it was substantially certain, or nearly inevitable that a two-blocking incident would occur, causing injury such as that sustained by the plaintiff."

Jurisprudence interpreting "intentional act" exception
In Bazley v. Tortorich, 397 So.2d 475, 480 (La.1981), the Supreme Court held that the words "intentional act" mean the same as "intentional tort" in reference to civil liability. The court defined the meaning of intent as follows:
The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result.
Id. at 481.
In White v. Monsanto Co., 585 So.2d 1205 (La.1991), the Louisiana Supreme Court further explained the meaning of "intentional act" under LSA-R.S. 23:1032(B) as above, then added the following statement:
Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
Id. at 1208, citing Bazley, 397 So.2d at 481.
The "intentional act" loophole in the exclusive remedy provision is a narrow one. *463 Louisiana courts have narrowly interpreted the intentional act exception to the worker's compensation exclusivity provisions. A review of all the jurisprudence reveals that an overwhelming majority of the reported cases have resulted in summary judgment in favor of the defendant. See W.S. Malone & H.A. Johnson, Workers' Compensation Law & Practice, § 365.
The term "substantially certain" has been subjected to intense review. It has been held to mean "nearly inevitable," "virtually sure," and "incapable of failing." Jasmin v. HNV Central Riverfront Corp., 94-1497 (La.App. 4th Cir. 8/30/94) 642 So.2d 311, 312-313, writ denied, 94-2445 (La. 12/9/94), 647 So.2d 1110; Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807 (La. App. 4th Cir.1991); King v. Schuylkill Metals Corp., 581 So.2d 300, 302 (La.App. 1st Cir.), writ denied, 584 So.2d 1163 (La.1991); Brown v. Diversified Hospitality Group, 600 So.2d 902 (La.App. 4th Cir.1992). It requires more than a reasonable probability, even more than a high probability, that an accident or injury will occur. Mahfouz v. J.A.C.E. Oilfield Sales & Service, 569 So.2d 1074, 1077 (La.App. 3d Cir.1990); Landry, 653 So.2d at 1203.
Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence. Tapia, 590 So.2d at 807-08; Williams v. Gervais F. Favrot Co., 573 So.2d at 540. Terms such as "reasonably foreseeable," "likely to occur," and "should have known" may raise issues of negligence or gross negligence, but do not amount to "intentional act." Adams v. Time Saver Stores, Inc., 615 So.2d 460, 461-62 (La.App. 4th Cir.), writ denied, 617 So.2d 910 (La.1993). Phrases using the words "intentional" or "with specific knowledge" are not magical; their mere recitation does not transform the plaintiff's allegations into intentional acts. Gallon, 619 So.2d at 748; Williams v. Charity Hospital, 499 So.2d 1260, 1261 (La.App. 4th Cir.1986).

Application to the instant case
In this case the plaintiff's broadest allegations of intentional conduct by Woodward, as set forth in his Second Supplemental and Amending Petition, were as follows:
1) Its failure to procure and install a "two block warning system" of which it had knowledge, and of which it knew would have prevented the accident in question, and, alternatively,
2) Its intentional removal of the "two block warning system" from the crane,
The above acts and/or omissions constituting an intentional tort and/or gross negligence, for which the defendant, WOODWARD, INC., is liable unto your petitioner.
3) As well as any and all other acts and/or omissions which may be proved at the trial of this matter.
The embodiment of plaintiff's intentional tort cases against his employer is based on the employer's failure to procure and install an anti-two-block warning system and, alternatively, its removal of the warning device. In support of these allegations, plaintiff relies upon Mr. Lehman's affidavit, stating his opinion that a two-block situation was nearly inevitable and that the injuries were "virtually certain" to result in the absence of an anti-two-block warning system. Finally, the plaintiff claims that Woodward executives intentionally elected not to repair the original warning system.
In response to these allegations, the defendant avers that it was not required, either at the time of purchase or at the time of the accident, by any law, rule, or standard to install any anti-two-block warning system on the auxiliary line. Woodward used the crane for many years without an anti-two-block warning system on the auxiliary line; such warning devices were not common in the industry. Further, the crane operator had never used a crane with a functioning anti-two-block warning system.
Since at least 1982, this Court has consistently held that the failure to supply safety devices and the failure to adhere to safety regulations such as those promulgated by OSHA do not constitute "intentional acts" so as to strip the employer of the protection of the worker's compensation law. For example, in Jacobsen v. Southeast Distributors, *464 Inc., 413 So.2d 995 (La.App. 4th Cir.), writ denied, 415 So.2d 953 (La.1982), this Court held that an employer's refusal to provide its employee with a requested safety device was not an intentional tort because it could not be said that such refusal created a "substantial certainty" that injury would result. Id. at 997-98. We specifically noted the Louisiana Supreme Court's observation in Bazley that "in most states, intentional misconduct `require[s] a commission of a genuine intentional tort and have refused to stretch liability to include negligence, recklessness or constructive intent.'" Id. at 998.
Likewise, in Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4th Cir.), writ denied, 571 So.2d 649 (La.1990), we observed that "[e]ven proof that a worker was told by his employer to work in an unsafe place was considered insufficient to prove an intentional tort." Id. at 594 (citing Jacobsen, 413 So.2d at 998). And, in Williams, 573 So.2d 533, we cautioned that "[a]llegations of deficiently designed machinery and disregarding OSHA safety provisions are insufficient" to state an intentional tort. Id. at 541. Significantly, in each of these cases, the Louisiana Supreme Court denied writs, thereby eschewing the opportunity to correct what the dissent now apparently deems to be an erroneous rule of law.
In a case very much on point, the First Circuit held that an employer's failure to remedy a known dangerous condition was not an intentional tort. Erwin v. Excello Corp., 387 So.2d 1288 (La.App. 1st Cir.), writs denied, 396 So.2d 1242, 397 So.2d 1363 (La. 1981). In that case, the employee, Erwin, brought suit against his employer, the Great Atlantic and Pacific Tea Company ("A & P"), after his arm was injured in a milk bottling machine that unexpectedly started as he was trying to dislodge a milk carton that had become stuck in the machine. Erwin alleged that A & P had engaged in an intentional tort by intentionally failing "to repair and make operative a known defective safety cut-off switch" and by intentionally requiring him to operate the machine after having notice that it "would suddenly begin operating without being activated on the control panel." Id. at 1289. The court rejected these claims, explaining as follows:
We find no merit in the appellant's contention that by merely alleging "intentional injury" as we have set out above, he has avoided the mandatory effect of LSA-R.S. 23:1032. There is also no merit in appellant's contention that certain conduct of the A & P employees must be construed as satisfying the "intentional act" requirement of the statute. The record reflects that this was not an "intentional act" that caused the accident and resulting injury to the plaintiff. There is nothing to indicate that any of these defendants entertained a desire to bring about the result obtained, or could possibly have believed that the result was substantially certain to follow anything they did or did not do. No serious argument can be made that anyone employed by the A & P connected with this work or accident had any active desire that the accident with resulting injury should happen. On the contrary, the affidavits of the plaintiff and his co-employee, John Jackson, and the depositions of the three executive officers positively show that none of these defendants entertained a desire to bring about the results here or that they believed the result was substantially certain to follow.
Id. at 1290 (footnote omitted). Accordingly, the court upheld the trial court's summary judgment in favor of the employer.
The same result should obtain in this case. Plaintiff's allegations against Woodward, as alluded to above, are nothing more than an attempt to transform negligence into an intentional tort simply by averring that the employer "intentionally" engaged in its otherwise negligent conduct. This court should not countenance such bald-faced attempts to circumvent the worker's compensation law. In enacting this provision, the Legislature made a conscious attempt to broaden the class of employers insulated by the worker's compensation scheme. We should not abrogate that policy decision by allowing otherwise negligent conduct to be metamorphasized into an "intentional act" merely by the insertion of the word "intentional" into the plaintiff's petition.
*465 Moreover, in this case, there was no proof that Woodward actually desired to bring about Bridges' injury. Thus, plaintiff was required to show that Woodward knew that Bridges' injury was substantially certain to follow from its failure to repair the anti-two-block device, regardless of what its desire may have been as to that result. Bazley, 397 So.2d at 481.
Plaintiff's petition contains two types of allegations, those which are based on negligence and those which contain conclusionary allegations of intentional tortious conduct. The latter are a transparent attempt to transform negligence or possibly gross negligence into an intentional tort by averring that the employer "intentionally" engaged in otherwise negligent conduct.
In an attempt to discharge this burden, the plaintiff placed great emphasis on the affidavit of Mr. Lehman, in which he opined that a two-block situation is nearly inevitable and that injuries were "virtually certain" to result in the absence of an anti-two-block warning system. However, plaintiff failed to establish that anyone at Woodward knew this. In point of fact, Woodward's own crane operator, Charles Fuchs, stated that anti-two-block warning systems were uncommon devices and that he had never before operated a crane that had a functional anti-two-block warning system. We therefore conclude that Woodward did not know that either its failure to repair or replace the warning system, or its removal of the warning system, was "substantially certain" to result in injury to Bridges or anyone else. In other words, Woodward did not have the intent or desire to cause Bridges' injury nor did Woodward know it was substantially certain that Bridges would sustain an injury.
Until the legislature changes LSA-R.S. 23:1032(B) or the Louisiana Supreme Court modifies its interpretation of the statute, we are mandated to follow the law. We recognize that the dissenters in this case and in other cases, have eloquently advocated a different interpretation and result. See Armstead v. Boh Brothers Construction Co., 609 So.2d 965 (La.App. 4th Cir.1992) (Waltzer, J., dissenting). However, until a change occurs, we are bound by the jurisprudence.

Conclusion
Accordingly, we affirm the trial court judgment granting the motion for summary judgment in favor of defendant Woodward. Both Bridges' case and American's intervention are dismissed.
AFFIRMED.
WALTZER, J., dissents with reasons.
MURRAY, J., dissents for reasons assigned by WALTZER, J.
WALTZER, Judge, dissenting with reasons.
I respectfully dissent from the majority opinion.
In opposition to Woodward's motion for summary judgment, Bridges provided the affidavit of Adm. Ben J. Lehman, USN (Ret.), a professional engineer and certified safety professional. In his opinion, the lack of the anti-two-blocking device on the auxiliary hoist was an immediate cause of Bridges' injury. Lehman opined:
"It is my considered professional opinion... [that] it is nearly inevitable that a two block situation will occur, having the potential of causing severe damage to the crane itself, to other property, and to persons working near it. Further, it is also my professional opinion that it was virtually certain that damage to the crane and to persons such as [Bridges] would be sustained if the Grove crane involved here were regularly operated without a properly installed, fully functioning and actively engaged anti-two-block device."
In Bazley v. Tortorich, 397 So.2d 475 (La. 1981), the Court held:
The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.

(Emphasis added). Bazley, 397 So.2d at 481.
*466 Lehman's affidavit establishes, for purposes of summary judgment[1], the substantial certainty of a two-blocking accident. The intentionality of the fault charged to Woodward is proved or disproved by application of the substantial certainty test set forth in Bazley.
Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4th Cir.1990), writ denied, 571 So.2d 649 (La.1990) does not require dismissal of Bridges' claim. Dycus' claim was for negligent repair, and the Court noted that "there [was] no indication that anyone was aware injury to the plaintiff was `substantially certain' to result from his doing his work without the proper safety equipment." Dycus, 568 So.2d at 595, quoting Davis v. Southern Louisiana Insulations, 539 So.2d 922, 924 (La.App. 4th Cir.1989). This lack of evidence that defendant was aware that the injury was substantially certain distinguishes Dycus from the instant case.
According to Adm. Lehman's affidavit, it was "nearly inevitable" and "virtually certain" that in the absence of the warning device the two-blocking accident would cause injury to a person in Bridges' position.
The plaintiff produced sworn testimony that brings his claim precisely within the terms of Bazley's definition. It is impossible to conceive of testimony that would more clearly bring a plaintiff's claim within this definition, short of proof of a criminal act requiring specific intent. In light of Adm. Lehman's evidence, the majority's dismissal is tantamount to granting an exception of no cause of action: accepting the truth of Bridges' allegations, he is not allowed to recover. The writer of the majority opinion has espoused this view in his dissent in McKee v. Inspectorate America Corporation, 93-1253 (4/14/94), 636 So.2d 305, writ denied 94-1269 (La. 9/2/94), 643 So.2d 144; however, that is not the law. The majority yields to the temptation to extend tort immunity beyond the Bazley standard, and implicitly overrules both the rule of this circuit stated in McKee,[2] and that of the Louisiana Supreme Court stated in Carey v. UMC (United Mechanical Contractors), 553 So.2d 472 (La.1989).
I believe that based upon the record plaintiff has not failed to state a cause of action as a matter of law, and is entitled to present his case before the trier of fact.
NOTES
[1] We are aware of several decisions which have upheld the no cause of action exception on the issue of intentional tort. In the seminal case of Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Supreme Court upheld an exception of no cause of action. See also Vallery v. Southern Baptist Hospital, 630 So.2d 861 (La.App. 4th Cir.1993), writ denied, 634 So.2d 860 (La.1994); Wilson v. State DHHR, 628 So.2d 1164 (La.App. 3d Cir. 1993); Williams v. Charity Hospital, 499 So.2d 1260 (La.App. 4th Cir.1986).
[1] In Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4th Cir.1993), this Court held that the papers supporting the position for the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4th Cir.1993), writ denied 629 So.2d 404 (La.1993). Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981). A motion for summary judgment is not designed to be a substitute for a trial on the merits. Oller v. Sharp Elec., Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194 (La.1984). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3rd Cir.1974), application denied, 302 So.2d 308 (La. 1974).
[2] We note that the Louisiana Supreme Court denied the application to review this opinion from a five-judge panel of this Court. A dissent in the Fourth Circuit case contended that the intentional tort issue may be determined on an exception of no cause of action.