t, BYRNES, Judge.
Plaintiffs-appellants, the surviving spouse and children of the decedent, Wesley Card-well, appeal an adverse summary judgment[1] determination by the trial court dismissing plaintiffs’ claims against two of the defendants, Pittman Construction Company, Inc. (PCCI) and C.R. Pittman Construction Company, Inc. (CRPCCI)[2] based on findings that both were employers of the decedent at the time of his on the job death by electrocution and, therefore, immune from tort liability for the death of the decedent. We affirm.
The decedent, Cardwell, was electrocuted while on the job when a crane upon which he was standing at a construction site came into contact with an overhead high tension wire. The plaintiffs allege that the danger of contact between the crane and the overhead high tension wire were not only obvious, but actually observed and nevertheless disregarded.
12Plaintiffs contend that neither Pittman Company was immune from tort liability because as plaintiffs alleged in their “First Amending and Supplemental Petition” the decedent’s injuries and death arose out of the “deliberate and intentional tortious conduct and fault of the defendants”, the Pittman companies. However, an analysis of the bases for plaintiffs allegations of “deliberate and intentional tortious conduct and fault of the defendants” reveal that plaintiffs’ case is at best one of reckless conduct or gross negligence because of the obvious and actually observed high risk nature of the crane’s location.
Mere knowledge and appreciation of risk does not constitute intent. Adams v. Time Saver Stores, Inc., 615 So.2d 460, 463 (La.App. 4 Cir.), writ denied, 617 So.2d 910 (La.1993). There is nothing in the record that would support a finding that the Pittman Companies actively desired the electrocution in any sense other than creating a situation in which a high degree of risk existed for an electrical accident. None of the deposition testimony suggests that anyone working for the Pittman Companies harbored any ill will toward the decedent, and the plaintiff does not contend otherwise. There is nothing in the record that would allow this Court in the conduct of this de novo review to infer the possibility that the decedent was the victim of foul play which would be the most universally accepted definition of intentional act by any standard; or that the decedent was the victim of some ill conceived practical joke gone horribly awry similar to those cases where intentional batteries resulting in unintended injuries are classified as intentional for tort purposes. The coverage of the act *890 was intended to be interpreted liberally, the exceptions narrowly. Bazley v. Tortorich, 397 So.2d 475 (La.1981); Adams, supra.
^Plaintiffs contend that disputed facts exist and the testimony of the various witnesses is not entirely consistent. However, none of the disputed facts and none of the minor inconsistencies in witness testimony would permit of any conclusion beyond that this was a tragic accident involving at worst gross negligence. No view of the record would suggests the existence of a genuine issue of material fact that would support a finding of intentionality. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues as is true of the instant case. Davenport v. Amax Nickel, Inc., 569 So.2d 23 (La.App. 4 Cir.1990), writ den. 572 So.2d 68 (La.1991).
Louisiana courts have narrowly interpreted the intentional act exception to the worker’s compensation exclusivity provisions. Bridges v. Carl E. Woodward, Inc., 94-2675, p. 8 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, 463, writ denied, 95-2735 (La. 1/26/96), 666 So.2d 674. Summary judgment is the appropriate device for raising the question of “intentional act” as that term is used in LSA-R.S. 23:1032(b). Id. at p. 5, 663 So.2d at 461. In Bridges the plaintiff specifically alleged that the defendant-employer’s acts constituted and intentional tort, but this Court noted that: “Phrases using the words ‘intentional’ or ‘with specific knowledge’ are not magical; their mere recitation does not transform the plaintiff’s allegations into intentional acts.” Id. at 9, 663 So.2d at 463. This Court also noted in Bridges that an employer’s failure to remedy a known dangerous condition was not an intentional tort. For an in depth discussion of “intentional act” in the context of the Worker’s Compensation Act see also Adams, supra.
I4CRPCCI was the direct employer of the decedent at the time he was electrocuted.[3] PCCI was the statutory employer of the decedent at the time he was electrocuted.
Prior to July 3,1991, the Pittman brothers, Albert E. and Charles R., were the sole and equal joint owners of PCCI. On July 3,1991 they entered into a Tax-Free Corporate Reorganization whereby they effectively divided the company between themselves. Albert kept the original corporate entity, PCCI, and became its sole shareholder, while in essence half of that corporation was transferred to a new corporation, NEWCO (referred to herein as CRPCCI) which was solely owned by Charles.
The agreement noted that at the time of its execution PCCI had four construction jobs under contract, each of which was specifically described in the agreement. The agreement called for PCCI to retain two of those pending contracts. The other two, including the construction project that is the subject of this litigation were assigned to CRPCCI along with the employees working that project. Plaintiff does not deny the existence of the agreement dividing PCCI between the two brothers, nor the fact that the agreement specifically assigns the Chef Menteur project to CRPCCI. Nor does plaintiff deny that the contract for the construction project was between PCCI and the State of Louisiana Department of Transportation and Development (DODT). Finally, the plaintiff does not assert that the DODT ever transferred its direct contractual relationship from PCCI to CRPCCI. Thus, at the time of the electrocution, PCCI as a matter of law was still the direct contractor of the DODT and CRPCCI was PCCI’s as-signee or, in effect, |sPCCI’s sub-contractor. The end result is that as a matter of law CRPCCI was the decedent’s direct employer at the time of the accident pursuant to the Tax-Free Corporate Reorganization agreement, but PCCI was nonetheless the decedent’s statutory employer. LSA-R.S. 23:1061.
CRPCCI is immune from tort liability as the decedent’s direct employer. LSA-R.S. 23:1032. PCCI as the direct and primary contractor with the DODT is immune from tort liability when LSA-R.S. 23:1032 is read *891 in conjunction with LSA-R.S. 23:1061. Crochet v. Westminster City Center Properties, 572 So.2d 720 (La.App. 4 Cir.1990); Cain v. Martin Marietta Corporation, 537 So.2d 294 (La.App. 4 Cir.1988), writ denied, 538 So.2d 612 (La.1989). In reaching this conclusion we take cognizance of the non-exclusive list of factors set forth in the recent Supreme Court ease of Kirkland v. Riverwood International USA, Inc., 95-C-1830 p. 6 (La. 9/13/96), 681 So.2d 329 and the totality of circumstances. The work that CRPCCI was doing when the decedent was killed was the very work PCCI held the contract to do. The type of work done by CRPCCI is the same kind done by PCCI. The work of CRPCCI was not specialized vis a vis that done by PCCI. The work done by CRPCCI was the routine, customary, ordinary and usual work done by PCCI. For all practical purposes CRPCCI and PCCI were corporate “twins”. It is impossible to differentiate in any meaningful way between the type of work done by PCCI and CRPCCI.
The Tax-Free Reorganization agreement, PCCI’s contract with the DODT, and the affidavit of Charles Pittman all support this conclusion. Plaintiff counters that the Tax-Free Reorganization agreement contains language showing that the corporate split came as a result of personal rift between the Pitt-mans. From this 16plaintiff argues that the two Pittmans do not get along well enough for a general contractor/sub-contractor relation to exist between them. Plaintiff also contends that it was the intention of the Pittmans to substitute CRPCCI for PCCI in dealings with the DODT on this project. But the relationship between the DODT and PCCI and the relationship between PCCI and CRPCCI is a matter of law regardless of how the Pittmans might choose to denominate or characterize it. The level of animosity and lack of cooperation between the Pitt-mans, to the extent it might be assumed to exist for purposes of argument, does not alter the fact that as a matter of law the primary contract was between PCCI and the DODT, and the assignment to CRPCCI was only as between it and PCCI. No agreement between CRPCCI and PCCI could alter the direct and primary contractual relationship that already existed between PCCI and the DODT. Even if it was the intention of the Pittmans to substitute CRPCCI for PCCI as the primary contractor on the contract with the DODT, plaintiff offers nothing that would raise as a genuine issue the possibility that the DODT ever agreed to release PCCI from its contractual obligations and substitute CRPCCI in its place. Therefore, as a matter of law the assignment of the contract by PCCI to CRPCCI must be a second tier arrangement, i.e., a “two contract” situation as contemplated by LSA-R.S. 23:1061.
We find no genuine issue of material fact on the questions of intentionality and the decedent’s “two contract” employment status, and that the defendants, CRPCCI and PCCI, are entitled to judgment dismissing them from this suit as a matter of law.
For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.

. Summary judgment review is de novo. In this case the outcome would be the same regardless of whether the old summary law is applied or whether the recent 1966 amendments to LSA-C.P.P. art. 966 are applied. See Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580.

. The two companies will be referred to collectively as the "The Pittman Companies.”

. Plaintiffs’ brief acknowledges that "the witnesses who testified swore their paychecks and instructions came entirely from CRPCCI.”