688 So.2d 1298 (1997)
Clay GASPARD and Kern Pittman
v.
ORLEANS PARISH SCHOOL BOARD, et al.
No. 96-CA-1754.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1997.
*1300 Gregory D. Guth, Sacks & Smith, New Orleans, for Plaintiffs-Appellants Clay Gaspard and Kern Pittman.
James A. Stapp, Robert M. Rosenberg, Polack, Rosenberg, Endom & Reiss, New Orleans, for Defendant-Appellee Orleans Parish School Board.
John F. Young, Thomas A. Rayer, Jr., Young & Associates, New Orleans, for Defendant-Appellee Arc Mechanical Contractors, Inc.
Before KLEES, LOBRANO and ARMSTRONG, JJ.
KLEES, Judge.
On August 31, 1994, petitioners Clay Gaspard and Kern Pittman ("petitioners"), filed a suit for damages in civil district court for the Parish of Orleans. Petitioners alleged that they were exposed to toxic substances while employed by defendant Arc Mechanical Contractors, Inc. ("Arc"), while working at Robert R. Moton Elementary School ("the School"), a facility owned by the co-defendant, Orleans Parish School Board ("OPSB"). Both Arc and OPSB denied that petitioners were exposed to any toxic substances and, in the alternative, that the Louisiana Workers' Compensation Law was petitioners' exclusive remedy.
On May 17, 1995, Arc and OPSB each filed a motion for summary judgment based upon the exclusivity provisions of the Louisiana Workers' Compensation Law. The district court granted Arc's motion for summary judgment and denied OPSB's motion. OPSB filed a writ and an appeal seeking the reversal of the denial of its motion for summary judgment. The writ was consolidated with this matter. Petitioners filed an appeal of the motion granting Arc's motion for summary judgment. The actions were consolidated into this proceeding.
The facts of the case are as follows: On August 9, 1993, Arc entered into a contract with OPSB to repair and/or replace the plumbing system of the Morton Elementary School. Because the school was built upon a landfill, Chester A. Cabirac, the president of Arc, inquired about the safety conditions of the work site. Prior to commencing work, Arc was assured by OPSB and L'Acquis Consulting Enterprises, Inc. ("LACE"), the architect/engineering firm and representative of OPSB in the project, that the area in which Arc would be working had been extensively tested and was a safe place in which to work. After Arc became aware of publicity regarding the School and possible contamination by now-banned termaticides, Arc spoke with OPSB and LACE regarding safety conditions of the work site and requested information regarding soil testing. LACE made the soil test results available to Cabirac, who reviewed them and determined that the School was a safe place to work. LACE again assured Arc that its employees would not be exposed to harmful contaminants, toxins or carcinogens.
At the inception of the job, Arc employees were provided with safety equipment such as protective head wear, gloves, boots and protective coveralls. Arc also used a monitor to detect any harmful gases on the work site. Fans were used to ventilate the area.
Petitioners were hired on or about September 29, 1993 on a temporary basis and for that particular job. In the course of their employment with Arc, petitioners were required to crawl through subterranean tunnels. Shortly thereafter, a pesticide odor was allegedly detected. Arc immediately discontinued work and requested that OPSB and/or LACE conduct additional soil and air tests. Arc employees did not return to work until Arc received test results which conclusively *1301 established that the area in which Arc employees would be working was safe. Arc also tested its employees and attempted to test petitioners. All test results of Arc's employees were negative. The petitioners were eventually laid off due to lack of work, after which point they initiated this lawsuit claiming that they became ill with toxic exposure. Petitioners maintain that Arc and OPSB committed an intentional tort against them, and are therefore liable under the LSA-R.S. 23:1032(B) exception to the Louisiana Workers' Compensation Act.

Standard for Summary Judgment
La.C.C.P. art. 966(B) states that a summary judgment shall be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Although a motion for summary judgment is not an appropriate substitute for a trial on the merits, it is the appropriate procedure when the issue of intent is raised. See Bridges v. Woodward, Inc., 94-2675 (La. App. 4 Cir. 10/12/95), 663 So.2d 458, writ denied, 95-C-2735 (La.1/26/96), 666 So.2d 674; Mayer v. Valentine Sugars, Inc., 444 So.2d 618, 620 (La.1984).
Petitioners claim that summary judgment was inappropriate in the present case since they had not completed discovery. However, in Simoneaux v. E.I. duPont de Nemours and Co., Inc., 483 So.2d 908, 912 (La.1986), the Louisiana Supreme Court stated,
There is no absolute right to delay action on a motion for summary judgment until discovery is completed. Under C.C.P. 967, a trial judge clearly has the discretion to issue a summary judgment after the filing of affidavits, or the judge may allow further affidavits or discovery to take place ... The only requirement is that the parties be given a fair opportunity to present their claim.
When the trial judge chose to hear the motions for summary judgment before discovery had been completed, he was acting well within his authority. Further, each side was given adequate opportunity to argue its case. Therefore, reversible error was not committed.

Intentional Tort Exception
Petitioners claim that the district court improperly granted Arc's motion for summary judgment and maintain that their case falls within the intentional act exception to the Louisiana Workers' Compensation Act.
Both sides concede that Arc was the employer of the petitioners. LSA-R.S. 23:1032(A) provides that workers' compensation is the exclusive remedy of an employee against his employer or co-employees. See Bridges, supra, at 462. However, LSA-R.S. 23:1032(B) states that employers can still be liable for intentional acts.
The Louisiana Supreme Court defined the meaning of intent under LSA-R.S. 23:1032(B) in White v. Monsanto, 585 So.2d 1205, 1208 (La.1991). The court held that,
The meaning of `intent' is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather that to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
Id. See also Bazley v. Tortorich, 397 So.2d 475 (La.1981).
Still, courts have cautioned that the intentional tort exception should be narrowly construed. "Mere knowledge and appreciation of a risk does not constitute intent. Reckless or wanton conduct by an employer does not constitute intentional wrongdoing. Gross negligence, disregard of safety regulations or the use of safety equipment is not sufficient." Leger v. Hardy Rice Drier, Inc., 93-1512 (La.App. 3 Cir. 6/1/94), 640 So.2d 650; Bridges supra; Landry v. Uniroyal Chemical Co., Inc., 94-1274 (La.App. 1 Cir. *1302 3/3/95), 653 So.2d 1199, writ denied 95-1381 (La.9/15/95), 660 So.2d 461.
The following acts do not fall within the intentional act exception of LSA-R.S. 23:1032(B): (1) allegations of failure to provide a safe place to work, Hood v. South La. Medical Center, 517 So.2d 469, 471 (La.App. 1st Cir.1987); (2) poorly designed machinery and failure to follow OSHA safety provisions, Cortez v. Hooker Chem. & Plastics Corp., 402 So.2d 249 (La.App. 4th Cir.1981); (3) failure to provide requested safety equipment, Jacobsen v. Southeast Distributors, 413 So.2d 995 (La.App. 4th Cir.), writ denied, 415 So.2d 953 (La.1982); and (4) failure to correct unsafe working conditions, Dycus v. Martin Marietta Corp., 568 So.2d 592, 594 (La.App. 4th Cir.1990), writ denied, 571 So.2d 649 (La.1990).
In the case before the bar, Arc ascertained that the site was safe to work in and provided ample safety equipment for its employees. At the first indication that the site might be unsafe, Arc removed its employees from the area until it could be declared safe to enter. Arc's behavior does not indicate that the company either desired for the petitioners to be injured, nor did the company know to a substantial certainty that the petitioner would be injured. There was certainly not a high probability that an accident or injury would occur. See Brown v. Diversified Hospitality Group, 600 So.2d 902, 907 (La.App. 4th Cir.1992). This record shows no genuine issue of material fact which could possibly lead to the conclusion that Arc acted in a manner so certain to cause injury that intent to cause injury must be imputed. The trial court was therefore correct in granting summary judgment to Arc.

Punitive Damages
Petitioner also argues that the trial court erred in granting Arc's motion for summary judgment on the grounds that the petitioners had a valid La.C.C. Art. 2315.3 punitive damages claim against Arc.
La.C.C. Art. 2315.3 provides that punitive damages may be awarded "if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances."
In order to show that Arc behaved with a wanton or reckless disregard for public safety, the plaintiff must prove that Arc knew that the public safety was at risk or should have known that it was highly probable that harm would result from its acts or omissions. See Lasha v. Olin Corp., 91-459 (La.App. 3 Cir. 3/2/94), 634 So.2d 1354. "Defendant's derelictions must be accompanied by a conscious indifference to consequences amounting to a willingness that harm to the public safety would follow." Id. Further, to prove that Arc stored, handled or transported hazardous or toxic substances, the petitioners must show that the hazardous substance was in the possession and control of a person who then handles or otherwise deals with that substance. See Wiltz v. Mobil Oil Exploration & Producing North America, Inc., 702 F.Supp. 607, 608 (W.D.La.1989).
Clearly, Arc did not act in a manner that showed a wanton or reckless disregard to public safety. Further, Arc was never in possession or control of the toxic substance in this case. The lower court was correct in granting Arc's motion for summary judgment.

Statutory Employer
The lower court denied OPSB's motion for summary judgment on the grounds that they were not statutory employers of the petitioners.
In the recent case Kirkland v. Riverwood, 95-1830 (La.9/13/96), 681 So.2d 329, the Louisiana Supreme Court outlined a totality of the circumstances test to determine whether a party is considered a statutory employer. The court stated, "[a]mong those factors to be considered in determining whether a statutory employment relationship exists are the following: (1) the nature of the business of the alleged principle; (2) whether the work was specialized or non-specialized; (3) whether the contract work was routine, customary, ordinary or usual; (4) whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of the work; (5) whether the alleged principal had the equipment and personnel capable of performing the contract work; (6) whether those in similar businesses normally contract out this type of work or *1303 whether they have their own employees perform the work; (7) whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included workers and included that cost in the contract; and (8) whether the principal was engaged in the contract work at the time of the incident." Id. at 336-37. Any one factor is not by itself determinative. Id. at 336.
Under this eight part test it is clear that OPSB was not the statutory employer of the petitioners. The School Board manages the parish wide public school system and contracts out specialized work such as a replumbing job. The re-plumbing job was not routine work for the OPSB and they did not customarily use their own employees for such jobs. Further, Arc was an independent business enterprise with its own worker's compensation insurer.
Since OPSB did not show that they were the statutory employer of the petitioners, the trial court properly denied the motion for summary judgment.
Accordingly, for the reasons expressed above, the judgment of the trial court is hereby affirmed.
AFFIRMED.