614 So.2d 131 (1993)
POYDRAS SQUARE ASSOCIATES
v.
SUZETTE'S ARTIQUE, INC.
No. 92-CA-0572.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 1993.
*132 Turner, Young, Hebbler & Babin, Wilbur J. "Bill" Babin, Jr., Greg C. Fuxan, New Orleans, for appellee.
Thomas J. Smith, Leah C. Russell, Galloway, Johnson, Tompkins & Burr, New Orleans, for appellant.
Before BYRNES, LOBRANO and ARMSTRONG, JJ.
BYRNES, Judge.
On October 5, 1988 defendant Suzette's Artique, Inc. entered into a written lease with the plaintiff, Poydras Square Associates, for the commercial property located at Room # 412, New Orleans Centre, 1400 Poydras Street, New Orleans, Louisiana, 70112. On October 26, 1990 Poydras Square filed a petition for past due rent and rule for eviction against Suzette's.
On October 25, 1991 summary judgment was rendered in favor of Poydras Square, without opposition from Suzette's, condemning Suzette's to pay $19,363.33 for rent owed, $1,909.27 for attorney's fees, and all costs. Suzette's has brought this appeal from that judgment. We affirm.
Suzette's makes reference in its brief to an amended petition filed by Poydras Square on November 11, 1991 naming as additional defendants Robert and Suzette Ruegger as sureties for the lease; and a counter-claim filed by Suzette's on March 4, 1992 seeking damages on the basis that Poydras Square fraudulently induced it to enter into the lease in question. These pleadings were filed subsequent to the rendering of the judgment that is the object of this appeal. We will not consider them nor any issues which they raise.

Standard of Review When The Trial Court Grants a Motion For Summary Judgment
No oral or depositional testimony was introduced at the hearing on Poydras Square's motion for summary judgment.
Even in the absence of a formal opposition, the moving party must show that it is entitled to summary judgment. If a plaintiff whose opponent fails to file an answer must prove the basic elements of his case before he can be awarded a judgment by default, then it is reasonable to require that an unopposed motion for summary judgment must be at least adequate and correct on its face. The documents and affidavits in support of the motion must substantiate the essential elements of mover's claim. We adopt the standard used in White v. Mossy Oldsmobile, Inc., 606 So.2d 33 (La.App. 4 Cir.1992):
"In reviewing a district court's decision on a motion for summary judgment, an appellate court must review the entirety of the case, and is "permitted to pierce the mere allegations in the pleadings and consider the depositions, affidavits, and admissions on file in order to determine if summary judgment is appropriate." Williams v. Ingredient Technology Corp., 470 So.2d 283, 285 (La.App. 5 Cir. 1985).
The review of a motion for summary judgment entails a two step analysis. First, the moving party has the initial burden to affirmatively prove the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 (L.1983); Morcos v. EMS, Inc., 570 So.2d 69 (La.App. 4 Cir.1990). Secondly, if the moving party provides sufficient evidence to support the motion, the burden shifts to the opposing party to produce evidence proving that genuine issues of material fact are still present. Cooper v. Ceco, 558 So.2d 1355 (La.App. 4 Cir.1990)."
Suzette's introduced neither documents, affidavits, nor any other evidence in support of the allegation in its petition that there had been an amendment to the lease.
"When a motion for summary judgment is made and supported with affidavits, depositions, and/or answers to interrogatories, *133 the adverse party may not rest merely on the allegations or denials contained in his pleadings. He must provide opposing affidavits or other documentation which show that there are genuine issues of material fact. If he does not produce such documentation, the summary judgment, if appropriate, should be rendered against him. LSA-C.C.P. art. 967." Williams v. Markle Lumber Co., 566 So.2d 446, 450 (La.App. 4 Cir.1990). (Emphasis added).
Therefore, Suzette's mere allegation in its pleadings raises no genuine issue of material fact. The same can be said of Suzette's allegations contradicting Poydras Square's claim for rent due.

Timing and Sufficiency of Notice
Suzette's avers that Poydras Square's letter to Suzette's dated November 2, 1990 cannot support Poydras Square's allegation in its petition that it had already given notice "pursuant to the terms of the lease." It shows on the face of the record that Poydras Square's petition was filed on October 31, 1992, three days prior to the date of the notice which allegedly already had been sent by the time the petition was filed. The proper procedural vehicle for raising this issue would have been for Suzette's to file an exception of prematurity in the trial court. LSA-C.C.P. art. 926 and 927. It is too late to raise that issue for the first time in this court.
Suzette's also complains that the notice was not addressed to it at the leased premises as required by the terms of the lease and that it was not sent by certified or registered mail, return receipt requested.
Nothing on the face of the notice indicates that it was not sent by certified or registered mail, return receipt requested. It is supported by an affidavit filed by Poydras Square attesting to the fact that notice was given "pursuant to the terms of the lease" which language is broad enough to include all formalities of form, content, and manner of delivery as may have been required by the lease. To raise a proper objection, Suzette's should have filed the envelope that contained the notice, or a countervailing affidavit in opposition to the motion for summary judgment. It is too late to raise this issue in this court.
Likewise, Suzette's contention that the notice was improperly addressed and, therefore, invalid is without merit. The notice shows on its face that it was addressed to Suzette's at 701 Metairie Road instead of at the address of the "Demised Premises." The lease provides that notice "... shall be mailed to the other party at the address specified on page one, hereof, or to the demised premises if such communication is to lessee ..." By using the disjunctive "or" the lease provides for alternative acceptable addresses for sending notices to the lease. The first part refers to the addresses shown on page one for both lessor and lessee, i.e., 701 Metairie Road for Suzette's which is the address shown on the face of the notice. This satisfies the address requirement, if any, in the lease.
Moreover, all of Suzette's contentions concerning technical notice defects are irrelevant as our reading of the lease convinces us that no formal notice of non-payment was required.
Lease "Article XXIX-Notices" refers only to the form and manner of giving notice when notice is required. No mention is made of when notice is required.
"Article XX-Default by Lessee" discusses various events that would constitute a breach of the lease by the lessee, but does not require notice of default in all instances, including non-payment of rent:
ARTICLE XXDefault by Lessee
1. (a) In the event of any failure of Lessee to pay any rental or other sums when due hereunder, or if this Lease or any portion of Lessee's interest hereunder be assigned or the Demised Premises or any portion thereof be sublet, either voluntarily or by operation of law, except as herein provided, or if Lessee shall be in breach of its obligations included under Article VII, Paragraph 1 of this Lease, or if Lessee shall be in breach of its obligations included under Article VII, Paragraph 3 of this Lease on three *134 (3) or more occasions during any twenty-four (24) month period, or if lessee defaults in performing any of the other terms, conditions of covenants of this Lease to be observed or performed by Lessee for more than five (5) days after notice of such other default shall have been given to Lessee, or if Lessee or any agent of Lessee shall falsify any report required to be furnished to Lessor pursuant to the terms of this Lessee, or suffer this Lease to be taken under any writ of execution, then, in any one or more of such events (herein sometimes referred to as an "Event of Default"), Lessor shall have the immediate right to reenter the Demised Premises, either by summary proceedings, by force or otherwise, and to dispossess Lessee and all other occupants therefrom and remove and dispose of all property therein or, at Lessor's election, to store such property in a public warehouse or elsewhere at the cost of, and for the property in a public warehouse or elsewhere at the cost of, and for the account of, Lessee, all without service of any notice of intention to reenter and with or without resort to legal process (which Lessee hereby expressly waives) and without Lessor being deemed guilty of trespass or becoming liable for any loss or damage which may be occasioned thereby. Upon the occurrence of any such Event of Default, Lessor shall also have the right, at its option, in addition to and not in limitation of any other right or remedy, to terminate this Lease by giving Lessee three (3) days' notice of cancellation and upon the expiration of said three (3) days, this Lease and the term hereof shall end and expire as fully and completely as if the date of expiration of such three (3) day period were the date herein definitely fixed for the end and expiration of this Lease and the term hereof and thereupon, unless Lessor shall have theretofore elected to reenter the Demised Premises, Lessor shall have the immediate right of reentry in manner aforesaid, and Lessee and all other occupants shall quit and surrender the Demised Premises to Lessor, but Lessee shall remain liable as hereinafter provided, however, that if Lessee shall default (i) in the timely payment of any Minimum Rent or any item of additional rent payable hereunder or in the timely reporting of Adjusted Gross Sales as required by Article III hereof and any such default shall continue or be repeated for two (2) consecutive months, or (ii) in the performance of any other covenants of this Lease more than six (6) times, in the aggregate, in any period of twelve (12) months then, notwithstanding that such defaults shall have been cured within the period after notice as above provided, any further similar default shall be deemed to be deliberate and Lessor thereafter may serve said three (3) day notice of cancellation without affording to Lessee an opportunity to cure such further default. (Emphasis added).
Under these terms notice is required only in connection with "other default", the antecedent of which is the clause "... if Lessee defaults in performing any of the other terms, conditions or covenants of this Lease ..." This does not include the breaches referred to earlier in Article XX, i.e., assignment of interest, subletting, breach of Article VII, Paragraph 1, breach of Article VII, Paragraph 3, and the breach mentioned first of all, the "failure of Lessee to pay any rental or other sums when due...". (Emphasis added).
We regard the reference in Poydras Square's petition and the affidavit of Richard Cyr to notice having been given "pursuant to the terms of the lease" implying that the lease required such notice to be mere meaningless surplusage. It does not have the effect of altering the clear terms on the lease.
For the foregoing reasons we affirm the judgment of the trial court.
AFFIRMED.