NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-857

DONALD COLLIGAN, ET AL.

VERSUS

MAISON DE LAFAYETTE NURSING HOME
AND KRISTIN TAUZIN, FNP

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20173369, DIVISION B
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Candyce G. Perret,
Judges.

**AFFIRMED.**

**John Paul Charbonnet**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA   70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Donald Colligan**
    **Debra Colligan Lopez**
    **Maxine Colligan Navarre**
    **Dianne Colligan Colomb**

**Nicholas Gachassin, III**
**John D. Schoonenberg**
**Holly McKay Descant**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, LA   70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Maison De Lafayette Nursing Home**
    **Kristin Tauzin, FNP**

**PERRET, Judge.**

This is a wrongful death and survival claim arising from alleged medical malpractice during the treatment of Ed Colligan (deceased) by Defendants-Appellees, Maison de Lafayette Nursing Home ("Maison de Lafayette") and Kristin Tauzin, FNP ("NP Tauzin")(collectively referred to as "Defendants"). Plaintiffs-Appellants, Mr. Colligan's children, appeal a summary judgment rendered in Defendants' favor, dismissing their claims with prejudice. On appeal, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND:**

Plaintiffs allege that Defendants rendered care to Ed Colligan between June 6, 2013, and August 13, 2013. After suffering two strokes in the earlier part of 2013, and subsequent to treatment for respiratory failure in late May to early June, Mr. Colligan was re-admitted to Maison de Lafayette on June 6, 2013, at eighty-six years of age. During his stay, Mr. Colligan developed several pressure and non-pressure ulcers which were documented and treated by Defendants. However, the non-pressure ulcer on his right lower leg began to omit an odor. Mr. Colligan was transported to Lafayette General Medical Center ("Lafayette General") on August 13, 2013, where he was treated, and his right leg amputated above the knee. Mr. Colligan was septic and had an acute kidney injury. Mr. Colligan survived approximately two months after his transfer to Lafayette General. Plaintiffs allege that he succumbed to a respiratory illness on October 24, 2013.

Plaintiffs unsuccessfully presented their claim against Maison de Lafayette and NP Tauzin to a Medical Review Panel ("MRP" or "the panel"). After the panel returned a unanimous opinion finding no breach of the standard of care by Defendants, Plaintiffs filed the instant suit. Plaintiffs alleged a multitude of facts and failures regarding Mr. Colligan's treatment as well as a nonexclusive list of Defendants' breaches of standard of care, including:

a. Not recognizing signs and symptoms influencing Ed Colligan's skin integrity, wound care, and health status;

b. Not performing thorough and/or accurate physical assessments of Ed Colligan;

c. Not timely relaying significant changes in Ed Colligan's condition to a physician;

d. Not exercising the judgment and/or skill required of a licensed health care professional of [her/their] education, experience, and training as the circumstances of Ed Colligan's condition required.

Defendants moved for summary judgment on October 21, 2018, "based on the assertion that Plaintiffs had no medical expert testimony to show that Defendants breached the applicable standard of care or caused the alleged damages." *Colligan v. Maison de Lafayette Nursing Home*, 19-290, p. 1 (La.App. 3 Cir. 5/15/19) (unpublished opinion). Plaintiffs failed to submit a timely opposition brief. Thus, the trial court denied Plaintiffs the opportunity to argue at the summary judgment hearing and only permitted their opposition brief to be proffered. Thereafter, the trial court granted summary judgment in favor of Defendants in open court, and a written judgment was signed on December 10, 2018.

> On February 8, 2019, Plaintiffs filed a motion for devolutive appeal. . . . *Ex proprio motu*, this court issued a rule ordering Plaintiffs to show cause why the appeal should not be dismissed [as having been taken from a judgment lacking proper decretal language]. Plaintiffs did not respond to the rule.

*Id*.

Thereafter, this court dismissed the appeal without prejudice and noted that "Plaintiffs are free to seek a judgment containing the required decretal language." *Id*. at p. 2. The parties then filed a Motion to Amend Phraseology of Judgment on Motion for Summary Judgment Pursuant to La.C.C.P. Art. 1951 and obtained a judgment containing decretal language on August 30, 2019. Plaintiffs subsequently filed the instant appeal. On appeal, Plaintiffs assert three assignments of error:

1.   The Trial Court erred in finding that the burden shifted to appellants to show there was a genuine issue as to material fact when considering appellees' motion for summary judgment.

2.   The Trial Court erred in refusing to consider appellants' written opposition to appellees' motion for summary judgment and ordering the opposition to be proffered as a matter of evidence.

3.   The Trial Court erred in granting the appellees' motion for summary judgment.

**DISCUSSION:**

Summary judgments are reviewed de novo on appeal, using the same criteria as trial courts in determining whether summary judgment is proper; "i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882-83.

"A fact is 'material' when its existence or nonexistence may be essential to [the] plaintiff's cause of action." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755. Summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

In their first assignment of error, Plaintiffs argue that the trial court erred in finding that the burden shifted from Defendants to Plaintiffs to show there was a genuine issue as to material fact. This court recently reiterated the mover's burden of proof on summary judgment in *Landry v. Usie*, 19-40, pp. 4-5 (La.App. 3 Cir. 12/30/19), 286 So.3d 571, 575-76, *writ denied*, 20-182 (La. 3/16/20), -- So.3d --:

3

Even in the absence of a formal opposition, the moving party must show that it is entitled to summary judgment. If a plaintiff whose opponent fails to file an answer must prove the basic elements of his case before he can be awarded a judgment by default, then it is reasonable to require that an unopposed motion for summary judgment must be at least adequate and correct on its face....

....

The review of a motion for summary judgment entails a two step analysis. First, the moving party has the initial burden to affirmatively prove the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. *Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company*, 427 So.2d 1152 (L[a].1983); *Morcos v. EMS, Inc.*, 570 So.2d 69 (La.App. 4 Cir. 1990).

Secondly, if the moving party provides sufficient evidence to support the motion, the burden shifts to the opposing party to produce evidence proving that genuine issues of material fact are still present. *Cooper v. Ceco*, 558 So.2d 1355 (La.App. 4 Cir. 1990).

*Poydras Square Assocs. v. Suzette's Artique, Inc.*, 614 So.2d 131, 132, (La.App. 4 Cir.1993)(quoting *White v. Mossy Oldsmobile, Inc.*, 606 So.2d 33, 34 (La.App. 4 Cir. 1992)).

In the current case, Defendants moved for summary judgment. As the movers, Defendants have the initial burden of proving their entitlement to summary judgment as a matter of law:

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

Therefore, as in *Landry*, this court must "first determine whether the Defendants satisfied their initial burden of establishing their entitlement to summary judgment dismissal, regardless of Plaintiffs' failure to submit a [timely] opposition[.]" *Id*. at 576. "If Defendants failed to satisfy their initial burden, then the burden never shifted to Plaintiffs to produce evidence in opposition to Defendants' motion, and Plaintiffs' failure to submit any such evidence is irrelevant to the analysis." *Id*.

To summarize the elements set forth in La.R.S. 9:2794, a plaintiff in a medical malpractice action must prove by a preponderance of the evidence "(1) the standard of care applicable to the physician; (2) a violation of that standard of care by the physician; and (3) a causal connection between the physician's alleged negligence and the claimed injuries." *Vanner v. Lakewood Quarters Retirement Cmty.*, 12-1828, p. 6 (La.App. 1 Cir. 6/7/13), 120 So.3d 752, 755.

"Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Samaha v. Rau*, 07-1726, pp. 5-6 (La. 2/26/08), 977 So.2d 880, 884.

Defendants sought summary judgment to dismiss Plaintiffs' claims alleging that Plaintiffs had no expert opinion regarding the standard of care and causation, elements of a medical malpractice claim under La.R.S. 9:2794. In support of their motion, Defendants submitted the MRP opinion with the affidavit of a panel member certifying the opinion, affidavits from three panel members correcting the MRP opinion, pleadings, Mr. Colligan's death certificate, and Mr. Colligan's medical records from Lafayette General, Dr. Gary Guidry, Dr. Charles Louis, Maison de Lafayette, and Regional Medical Center. Not all of the exhibits have been designated for inclusion in the appellate record. What is included in the appellate

5

record are the panel affidavits and MRP opinion as well as medical record excerpts from Lafayette General and Maison de Lafayette.

Mr. Colligan's medical records show that after requiring a transfer to Lafayette General on May 27, 2013, for respiratory failure, Mr. Colligan returned to Maison de Lafayette on June 6, 2013. Prior to his return to Maison de Lafayette, his medical records note that a "bilateral lower extremity venous non-invasive vascular assessment revealed positive acute DVT [Deep Vein Thrombosis] in the right proximal femoral to distal posterior tibial and peroneal veins."

Maison de Lafayette's records include a Non-Pressure Ulcer Assessment, which reported weekly updates on Mr. Colligan's right calf, documented as an arterial ulcer. From June 7, 2013, to August 7, 2013, the ulcer's measurement decreased, and no drainage was noted. However, beginning July 7, 2013, slough and erythema were noted. The records also contain a Non-Pressure Ulcer Assessment for Mr. Colligan's right ankle, also documented as an arterial ulcer. From July 10, 2013, through July 31, 2013, the measurements of the ankle ulcer were roughly unchanged, and slough noted. No drainage was documented. On August 7, 2013, the assessment notes an increase in the ankle ulcer along with drainage. Also included in the appellate record is one page by NP Tauzin documenting Mr. Colligan's condition on August 12, 2013. Her notes state, "Wound to R outer leg + lateral ankle[.]" She notes increased "slough + necrotic area + development of foul odor over the weekend."

Maison de Lafayette's Treatment Record for Mr. Colligan charted pressure ulcers to his coccyx, right buttock, right leg, and right ankle on August 1, 2013. The "pressure ulcer" at Mr. Colligan's right "lower leg" and right ankle were also charted on August 12, 2013. Additionally, the Weekly Body Audit consistently noted a pressure ulcer on Mr. Colligan's buttock and coccyx, and a pressure ulcer on the

right calf and ankle. The only deviation from this charting is on June 29, 2013, where a nurse noted a pressure ulcer to the right front calf, a *non*-pressure ulcer on the front right ankle, and a *non*-pressure ulcer on the right back calf.

Once transferred to Lafayette General on August 13, 2013, Mr. Colligan required an above knee amputation. The pathology report states: "There is a large necrotic ulcer overlying the lateral distal leg measuring up to 9 cm. There is an ulcerated necrotic ulcer overlying the lateral ankle measuring up to 4 cm. Both show wet gangrene bases." Lafayette General records noted, "Sepsis: secondary to gas gangrene @ rt lateral malleoli[.]" As to the history of the illness, the records state:

> He developed a pressure sore on the lateral malleolus right ankle some time ago. The family reported foul smelling discharge on 08/09/13, and requested nursing home to send him to the hospital sometime over the weekend, which the nursing home did not do. The patient was sent to the hospital today when he had fever of 101.

The MRP reviewed the position paper, family affidavits, and photographs submitted by Plaintiffs, as well as Mr. Colligan's medical records submitted by Defendants. After reviewing the evidence, the MRP first opined that "the evidence does not support the conclusion that the defendant, Maison de Lafayette Nursing Home, failed to meet the applicable standard of care as alleged." The MRP reasoned that "[w]hile Mr. Colligan did suffer with pressure ulcers, he healed well from the pressure ulcers. The care administered by Maison de Lafayette's employees for the pressure ulcers was timely and appropriate and properly documented." The panel opined that the "venous stasis blister[1] on the right calf (not a pressure ulcer) was the problem that developed into the one of most concern." Further, the venous stasis ulcer "was complicated by Mr. Colligan's peripheral vascular disease, the DVT he had suffered, and chronic venous stasis." The panel continued, "The actions of both

---

[1] The subsequent affidavits of the panel members correct the classification of the lateral right calf non-pressure ulcer. The members attest that the opinion mistakenly classified the non-pressure ulcer as venous stasis blister and ulcer rather than an arterial blister and ulcer.

7

nurse Tara Nico and nurse practitioner Kristin Tauzin in the documentation and notes, and in the administration of care, were acceptable and within the standard of care." "The fact that the patient's amputation ultimately did not heal supports that [sic] panel's opinion that the patient's anterior lateral right thigh ulcer and its progression was complicated by his peripheral vascular disease and chronic venous stasis and his DVT." Specifically, the panel found that the "records indicate that the nurse practitioner was involved in the patient's care, and that plans were being made on handling the patient, and that they were aware of the evolving problem and reacting appropriately to developments." The panel opined that issues surrounding the documentation and monitoring of Mr. Colligan's pressure ulcers were not the real problem, which was the venous stasis ulcer (later corrected to be an arterial ulcer). Ultimately, the panel opined that the "judgment to transfer the patient August 13, 2013 did not cause a delay in the diagnosis or treatment or cause the patient to die and lose a chance of surviving, or cause a progression of the patient's condition."

The subsequent correcting affidavits not only clarified that the right calf non-pressure ulcer was actually an arterial blister and ulcer, but also reinforced the panel's opinion that there was no breach in the standard of care by Defendants. The affidavits further explain:

> 4. Arterial ulcers are generally associated with peripheral artery disease/peripheral vascular disease.
>
> 5. Based upon the medical records reviewed, Ed Colligan (D) had a history of bilateral lower extremity deep venous thrombosis.
>
> 6. A history of bilateral and/or more than one deep venous thrombosis increases the odds of the patient developing a lower extremity venous ulcer.
>
> 7. Appropriate wound care treatment to Ed Colligan's ulcers located on the lateral right lower extremity and lateral right ankle would be the same or similar regardless if the blisters/ulcers was [sic] classified as venous or arterial.

8

. . . .

8.      The gangrenous tissue identified on Ed Colligan's right lower extremity was secondary to his peripheral artery disease/peripheral vascular disease.

9.      The pathology report of Ed Colligan's amputated right lower extremity mentions "occlusive atherosclerosis of the popliteal artery" and "occlusive atherosclerotic arteriopathy," both of which are associated with peripheral artery disease/peripheral vascular disease."

Plaintiffs argue that the panel opinion is unreliable and is not supported by the medical records. Louisiana Revised Statutes 40:1231.9(H) states that a medical review panel opinion "shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive[.]" Further, the supreme court has noted that "as with any expert testimony or evidence, the medical review panel opinion is subject to review and contestation by an opposing viewpoint." *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775, p. 9 (La. 7/1/11), 1227.

A similar argument was made in *Schultz v. Guoth*, 10-343 (La. 1/19/11), 57 So.3d 1002, involving the untimely death of a fetus during labor. In that case, the plaintiff did not oppose summary judgment with expert evidence, but instead pointed to "inherent contradiction[s]" between "the panel's finding that ordering a C-section earlier in the crisis would not have been appropriate when it also found that ordering a C-section at 7:14 a.m. was appropriate." *Id*. at 1008. Additionally, the plaintiff argued that while the panel did not believe the baby was alive at the time of arrival to the hospital, the medical records included heart beats measured after arrival. Thus, the plaintiff concluded that the panel's opinion was unreliable. The supreme court noted, "Although the plaintiff argues the panel members ignored the medical evidence, the medical review panel opinion specifically stated that the evidence did not support the conclusion that Dr. Rabie failed to meet the applicable standard of

9

care." *Id*. at 1009. Furthermore, the supreme court stated, "In ruling on a motion for summary judgment, we are not free to simply disregard the movant's unopposed expert medical evidence." *Id*.

As this case involves a patient with a complex medical history and the negligence is not "so obvious that a lay person can infer negligence without the guidance of expert testimony[,]" Plaintiffs would need to prove the standard of care via a medical expert. *Samaha*, 977 So.2d at 884. As in *Schultz*, after reviewing the exhibits submitted by the parties, including all medical records, the panel unanimously found that the evidence did not support the conclusion that Defendants failed to meet the applicable standard of care. Plaintiffs did not present any medical expert to counter the MRP opinion and we are "not free to simply disregard the movant's unopposed expert medical evidence." *Id*. Defendants affirmatively proved the absence of factual support for an essential element to Plaintiffs' claim and the burden shifted to Plaintiffs to prove the existence of genuine issues of material fact in order to defeat summary judgment. However, Plaintiffs presented no expert to oppose Defendants' reliable expert medical evidence. Summary judgment was proper.

On appeal, Plaintiffs also assert that the trial court erred in refusing to consider their untimely written opposition and erred in only permitting the opposition to be proffered. The determination of whether the trial court abused its discretion in having the opposition proffered is of no importance to the outcome of this case. Even if Plaintiffs' opposition was considered, no additional evidence was provided. Plaintiffs' opposition merely asserts that the panel opinion and affidavits are inconsistent with the medical records and, thus, unreliable. As we have previously reviewed Defendants' evidence and found the burden switched to Plaintiffs to produce factual support sufficient to establish genuine issues of material fact, the

10

failure of Plaintiffs to submit additional evidence to create a genuine issue of material fact is detrimental to their claim.

**CONCLUSION:**

For the foregoing reasons, the judgment of the trial court granting summary judgment to Maison de Lafayette and Kristin Tauzin, FNP, is affirmed. All costs of this appeal are assessed to Plaintiffs-Appellants.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3